# UNITED STATES

### v.

**Larry S. WALDRON, 158 36 4959, Corporal (E–4), U. S. Marine Corps.**

### NCM 78 1382.

U. S. Navy Court of Military Review.

Sentence Adjudged 19 May 1978.

Decided 30 June 1980.

Thomas B. Kenworthy, Esq., Individual Defense Counsel.

LT Steven A. Curlee, JAGC, USNR, Appellate Defense Counsel.

LT J. G. Van Winkle, JAGC, USNR, Appellate Government Counsel.

Before CEDARBURG, C. J., and FERRELL and DONOVAN, JJ.

CEDARBURG, Chief Judge:

Appellant, charged with murder in violation of Article 118, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 918, was tried before a general court-martial composed of both officer and enlisted members held on 17, 18 and 19 April and 2, 3, 9, 10, 11 and 19 May 1978. After both sides rested, arguments having been heard and instructions given, the court initially found the accused guilty, by substitutions and ex-

ceptions, of voluntary manslaughter in contravention of Article 119, UCMJ, 10 U.S.C. § 919. The court thereupon proceeded to the presentencing portion of the trial, and matters introduced by the defense in mitigation and extenuation were heard. The Government's evidence during this stage of the trial was to consist of rebuttal relative to the accused's military performance; this evidence was not heard by the members, however, having been excluded by the military judge at an Article 39(a), UCMJ, 10 U.S.C. § 839(a), session. Instructions discussed at that session were given, after argument by counsel, and the court closed for deliberation. Sometime during that deliberation, however, the president of the court requested further instruction relative to the offense charged and the lesser included offenses also previously instructed upon, that is, unpremeditated murder [1] and the lesser included offenses of voluntary manslaughter,[2] involuntary manslaughter,[3] assault in which grievous bodily harm is intentionally inflicted,[4] assault with a dangerous weapon,[5] and assault and battery.[6]

The defense objected to reinstruction on the charge of unpremeditated murder [7] and, as they had vigorously done before the initial instructions prior to findings, objected to instruction on any lesser included offenses. The objections, however, were overruled by the military judge and the requested instructions were given once more. The court returned to deliberations and, shortly thereafter, announced that they had reconsidered their findings and that they had chosen, by substitutions and exceptions, to find the accused guilty of the lesser included offense of assault in which grievous bodily injury is intentionally inflicted. The findings announced, and neither side having anything to add before sentencing, the court once again closed for deliberations. It sentenced appellant to a bad-conduct discharge, confinement at hard labor for 1 year, forfeiture of all pay and allowances, and reduction to pay grade E–1. This sentence, as well as the findings, was approved by the convening authority.[8]

We have read the briefs submitted by both appellant and the Government and have considered the oral arguments made by both parties concerning the several assignments of error. I am convinced, however, that only one assignment of error has merit; that assignment asserts:

THE MILITARY JUDGE IMPROPERLY INSTRUCTED THE MEMBERS ON THE LESSER ASSAULT OFFENSES WHERE THE ACCUSED EXPRESSLY OBJECTED TO SUCH INSTRUCTIONS AND THERE WAS NO ISSUE OF FACT AS TO EITHER THE DEATH OF THE VICTIM OR THE CAUSE OF DEATH.

■ The evidence of record reveals that during the early morning hours of 15 July 1977 appellant was on duty at the residence compound of the U. S. Embassy in Cairo, Egypt, and was assigned to a guard post as a security measure for the U. S. Ambassador's protection. The residence compound was also guarded by an Egyptian security guard. There had been a recurrent problem with Egyptian guards sleeping on duty.

---

1. It was error to give this instruction since the offense was effectively no longer an offense before the court. Article 52(c), UCMJ, 10 U.S.C. § 852(c).

2. Article 119(a), UCMJ, 10 U.S.C. § 919(a).

3. Article 119(b), UCMJ, 10 U.S.C. § 919(b).

4. Article 128(b)(2), UCMJ, 10 U.S.C. § 928(b)(2).

5. Article 128(b)(1), UCMJ, 10 U.S.C. § 928(b)(1).

6. Article 128(a), UCMJ, 10 U.S.C. § 928(a).

7. See note 1, supra.

8. The court-martial order was promulgated on 15 August 1978. Subsequently, on 22 January 1979, a supplemental court-martial order was issued from U. S. Disciplinary Barracks, Fort Leavenworth, Kansas, where appellant was confined. That order, pursuant to clemency granted by the Naval Clemency and Parole Board, suspended the bad-conduct discharge, with provision for automatic remission, remitted all confinement effective 21 December 1978, remitted all forfeitures effective 6 December 1978, and remitted all reduction below pay grade E–3.

It appears clear that appellant, while making his rounds, found an Egyptian guard asleep at his post; that appellant shook the Egyptian to rouse him from his sleep; that an altercation of some kind occurred (appellant, in a later statement, reported that it appeared the Egyptian, armed with a revolver and a machine gun, was coming towards him as if he was about to assault him, so he drew his own revolver and fired at the Egyptian); that appellant fired his revolver at the Egyptian; and, that the Egyptian was mortally wounded as a result of the shooting. It is uncontroverted that appellant shot the Egyptian guard and that the guard died as a result of the shooting. We conclude, as the staff judge advocate opined in his review, that the only contested element of the murder offense was that of the unlawfulness of the force or violence used by the accused inasmuch as the accused's position at trial was that he acted in self-defense.[9]

As early as 1895 the United States Supreme Court took note of the danger inherent in instructions to the jury concerning lesser offenses to the inclusive offense charged in the absence of any evidence which might realistically support conviction of the lesser offense in the face of stronger, compelling evidence in support of the greater offense. *See Sparf v. United States*, 156 U.S. 51, 15 S.Ct. 273, 39 L.Ed. 343 (1895). The Supreme Court reasoned that a verdict in such "flagrant disregard of all the proof, and in violation by the jury of their obligation to render a true verdict . . . would have been the exercise by the jury of the power to commute the punishment for an offense actually committed, and thus impose a punishment different from that prescribed by law." *Id.* at 63–64, 15 S.Ct. at 278. Certainly, "where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justified it, would no doubt be entitled to an instruction which would permit a finding of guilt of the lesser offense." *Berra v. United States*, 351 U.S. 131, 134–

35, 76 S.Ct. 685, 688, 100 L.Ed. 1013 (1956), following *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1895). This entitlement, however, does not make such an instruction proper "where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and the greater offenses." *Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965). The *Sansone* Court went on to explain that:

> In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater. A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.

*Id.* This reasoning parallels that of the Court of Appeals in *Hansborough v. United States*, 308 F.2d 645 (D.C.Cir.1962):

> The evidence in any case, of course, must support any submission the court makes to the jury in its instructions. If the evidence precludes the legal possibility of guilt of a lesser included offense, then it would be error to submit the case to the jury on such offense. For example, in a felony murder case where the statute requires a verdict of murder in the first degree irrespective of premeditation, in the absence of special circumstances, instruction on lesser included offenses would be wrong. Due process commands that an accused be tried, and the jury instructed, on the facts as disclosed in the record. "Congress did not intend to invest juries in criminal cases with power arbitrarily to disregard the evidence and the principles of law applicable to the case on trial." *Sparf and Hansen v. United States, [supra]* . . .

*Id.* at 647–48 (footnotes omitted). *See also Logan v. United States*, 411 F.2d 679, 682 (D.C.Cir.1969) ("Unless there is a legal basis

---

9. Reasonably raised by the evidence, the defense was instructed upon; however, I do not believe, as the members of the court apparently did not believe, that appellant acted in self-defense when he shot the Egyptian guard.

in the evidence for an instruction respecting a lesser included offense, it is error to submit the case to the jury on any such offense.").

The inquiry as to whether an instruction can be given on a lesser included offense thus very often centers upon whether there is "a disputed factual element" present between the greater and lesser offense so to permit a *rational* decision by the jury that all elements of the lesser offense had been proved. *Sansone v. United States, supra* at 351, 85 S.Ct. at 1010. This approach was discussed, in context with a question of whether there had been error in a failure to give an instruction on a lesser offense at the behest of the defendant, in *Driscoll v. United States*, 356 F.2d 324, 327 (1st Cir. 1966); the Court there said:

> We take *Sansone* to mean that when the government has made out a compelling case, uncontroverted on the evidence, on an element required for the charged offense but not for the lesser-included offense, there is a duty on defendant to come forward with some evidence on that issue if he wishes to have the benefit of a lesser-included offense charged. To put it another way, while a judge cannot prevent a jury from rejecting the prosecution's entire case, he is not obligated, under these circumstances, to assist a jury in coming to an irrational conclusion of partial acceptance and partial rejection of the prosecution's case by giving a lesser-included offense instruction. Two prerequisites seem vital: that there be no factual dispute and that a finding contrary to the only evidence on the issue would be irrational.

By 1971, the Court of Appeals for the District of Columbia postulated that five conditions had to be met before either the defense or the prosecution were entitled to an instruction on a lesser included offense:

> First, as with most other charges, a proper request must be made. Second, the elements of the lesser offense must be identical to part of the elements of the greater offense. . . . Third, there must be some evidence which would justify conviction of the lesser offense.[8]

[8] *Sansome [sic] v. United States*, 380 U.S. 343, 351, 85 S.Ct. 1004, 13 L.Ed.2d 882 (1964). Of course if there is no dispute about the additional fact or facts which, coupled with the lesser included offense, do constitute a greater offense charged originally in the indictment, then the defendant has no right to a lesser included offense charge to the jury. For the trial court to give such a charge would simply be to invite the jury to exercise a degree of mercy by finding him guilty of a lighter offense, when the proof truly justified conviction as charged.

> Fourth, the proof on the element or elements differentiating the two crimes must be sufficiently in dispute so that the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense. Fifth, "[i]n general the chargeability of lesser included offenses rests on a principle of mutuality, that if proper, a charge may be demanded by either the prosecution or defense."

*United States v. Whitaker*, 447 F.2d 314, 317 (D.C.Cir.1971) (several footnotes omitted). *See also United States v. Thompson*, 492 F.2d 359, 362 (8th Cir. 1974).

The question remained, however, as to whether the holding in *Sansone v. United States, supra*, applied to the prosecution as well as to the defense. This issue was met directly in *United States v. Harary*, 457 F.2d 471 (2d Cir. 1972); in that case instructions had been given to the jury, at the Government's request and over the defendant's objection, on both bribery and the lesser offense of giving a gratuity to an Internal Revenue Service agent. The discussion by that court of the issue deserves close attention:

> The remaining question specifically left open by this Court in *United States v. Magnus*, 365 F.2d 1007, 1010–1011 (2d Cir. 1966), cert. denied, 87 S.Ct. 856, 386 U.S. 909, 17 L.Ed.2d 783 (1967), is whether the *Sansone* holding applies to the prosecution as well as the defense. The policies which underlie *Sansone*, the culmination of a line of decisions dating back to 1895, can lead to only one conclusion: the prosecution cannot go to the jury, over the objection of the defendant, on both the lesser and the greater offense unless an

element which distinguishes the two is disputed. *See* 8 Moore, Federal Practice ¶ 31.03[3], at 31–20, 21 n. 35; *Cf. United States ex rel. Hall v. Casscles*, 321 F.Supp. 673 (S.D.N.Y.1971).

Rule 31(c) of the Federal Rules of Criminal Procedure provides that a "defendant may be found guilty of an offense necessarily included in the offense charged." This rule, which carries forward § 9 of the Act of June 1, 1872, 17 Stat. 198, was designed initially to aid the prosecution when its evidence fell short of proving the offense charged in the indictment. *See United States v. Markis*, 352 F.2d [860] at 866; *Kelly v. United States*, 125 U.S.App.D.C. 205, 370 F.2d 227, 229 (1966), cert. denied, 388 U.S. 913, 87 S.Ct. 2127, 18 L.Ed.2d 1355 (1967); 8 Moore, Federal Practice ¶ 31.03[1]. In appropriate cases, however, the defense may avail itself of the rule. *Stevenson v. United States*, 162 U.S. 313, 16 S.Ct. 839, 40 L.Ed. 980 (1896); *United States v. Markis*, 352 F.2d at 866.

The proper case is one where "the jury may consistently find the defendant innocent of the greater and guilty of the lesser included offense. The jury is not given *carte blanche* to find the defendant guilty of only the lesser offense when such guilt necessarily establishes guilt of the greater offense." *Fuller v. United States*, 132 U.S.App.D.C. 264, 407 F.2d 1199, 1229 (1968) (*en banc*), cert. denied, 393 U.S. 1120, 89 S.Ct. 999, 22 L.Ed.2d 125 (1969). If there is no factual dispute concerning an element which distinguishes the offenses, to instruct on both offenses "would only invite the jury to pick between the [greater and lesser] so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." *Sansone v. United States*, 380 U.S. at 350 n. 6, 85 S.Ct. at 1009; *see Berra v. United States*, 351 U.S. [131] at 135, 76 S.Ct. 685 [at 688]; *Sparf v. United States*, 156 U.S. [51] at 63–64, 15 S.Ct. 273 [at 277]. Although the jury has the power to render a verdict "in the teeth of both law and facts," *Horning v. District of Columbia*, 254 U.S.

135, 41 S.Ct. 53, 65 L.Ed. 185 (1920), a judge should not instruct a jury on a lesser offense over the objection of the prosecution or defense, if that instruction serves only to encourage the jury to exceed its historical function of factfinding. As the late Justice Harlan stated: "The role of the jury in a federal criminal case is to decide only the issues of fact, taking the law as given by the court. *Sparf v. United States*, 156 U.S. 51, 102. [15 S.Ct. 273 [at 277], 39 L.Ed. 343.] Certainly Rule 31(c) was never intended to change this traditional function of the jury." *Berra v. United States*, 351 U.S. at 134, 76 S.Ct. at 688.

The rationale of *Sansone*, to which we have made reference, recognizes that the jury, although the defendant is in fact guilty of the greater offense, may take the easier course by exercising its mercy-dispensing power and return a guilty verdict on the lesser offense, thereby shirking its sworn duty. The underlying principle, however, applies equally when the prosecution seeks an instruction on the lesser offense. The jury, if it cannot agree on the basic issue of guilt, may seek the course of least resistance in the jury room and unjustly convict on the lesser offense instead of forthrightly acquitting. Those who have labored in the vineyard of litigation are aware that where the case is a hard one for the government, as this was, it will consider its task done if it can secure "the advantage of offering the jury a choice—a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate. . . ." *Cichos v. Indiana*, 385 U.S. 76, 81, 87 S.Ct. 271, 274, 17 L.Ed.2d 175 (1966) (Fortas, J., dissenting). Harary's repeated motions to dismiss the gratuity count to avoid the inconsistent and compromise verdict which resulted exhibited a willingness to risk foregoing a sympathy verdict which could bring a maximum sentence of two years instead of fifteen years. His counsel's judgment was based on the fear, fully justified by

the first trial, that the jury would not be able to agree on the issue of entrapment or the bribery count and thus resort to the easy way out.[12]   Indeed, the jury must have encountered difficulty in agreeing on a verdict (as, in fact, the first trial illustrated), and reached common ground through a compromise.   Otherwise, we cannot comprehend how, on the basis of the evidence we have already recited, it could find that the facts established the offense of giving a mere gratuity and not outright bribery.

[12] We are of the view that it will be a rare case indeed when a defendant will not want the advantage of a lesser-offense charge.   For obvious reasons, the all-or-nothing risk which the defendant here was willing to take is an unusual strategy.   We fully recognize, also, that compromise or inconsistent verdicts are not *per se* grounds for reversal.   *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932); *United States v. Magnus*, 365 F.2d at 1010.   This hardly leads to the conclusion, however, that in the face of vigorous objection a judge should give a charge that can only serve the purpose of inducing such verdicts.

The government, we are told, had an absolute right to have the jury charged on the gratuity offense because the indictment contained a separate gratuity count.   The government, however, cannot avoid the strictures of the *Sansone* doctrine by the simple expedient of asking the grand jury to include the lesser offense as a separate count in the indictment.   *See Fuller v. United States*, 407 F.2d at 1230.   A separate count serves little purpose in light of Rule 31(c), which permits the court to charge the jury on a lesser offense in appropriate cases despite the absence of a separate count in the indictment.

So that the boundaries of our holding are clear, we emphasize that we do not consider it to be reversible error to submit a lesser charge to the jury unless no "disputed factual element" which distinguishes the offenses is present and, in addition, the defendant makes a timely motion or objection at the trial.

*Cf. Fuller v. United States*, 407 F.2d at 1230–1231.

*Id.* at 478–79 (one footnote omitted).   *See also United States v. Busic*, 592 F.2d 13 (2d Cir. 1978); *United States v. Tsanas*, 572 F.2d 340 (2d Cir. 1978); *United States v. Stolarz*, 550 F.2d 488 (9th Cir. 1977); *Lightfoot v. United States*, 378 A.2d 670 (Ct.App. D.C.1977).   *Compare* Model Penal Code § 1.07(5) (1962) *with* Model Penal Code § 1.08(5) (Tent. Draft No. 5, 1956) (commentary at 42–43).

▪ In view of the foregoing, I do not believe that the evidence before us in this case rationally supports conviction of an offense which would necessarily be included within the offense of voluntary manslaughter, the finding originally returned by the court-martial.   In other words, given the evidence here, I believe that the least offense of which appellant could be convicted is voluntary manslaughter.   Inasmuch as an issue of passion or fear was reasonably raised, it was clearly proper for the military judge to instruct on voluntary manslaughter.   *See United States v. Judkins*, 14 U.S. C.M.A. 452, 34 C.M.R. 232 (1964).   But, "[t]o consider the acts of accused as negligent, either culpable or otherwise, would approach absurdity.   The death of the victim was proved, thus ruling out any consideration of the offenses of assaults with various intents."   *United States v. Craig*, 2 U.S.C. M.A. 650, 655, 10 C.M.R. 148, 153 (1953).   There is, in this case, similarly no reasonable interpretation of the evidence which would rationally support instruction upon either involuntary manslaughter or the assault offenses.   There is simply no reasonable "disputed factual element" between that required to prove the least onerous offense of which appellant could rationally be found guilty, that is, voluntary manslaughter, and the lesser offenses on which the members were advised.   I am convinced that the finding of guilty of an assault in which grievous bodily injury is intentionally inflicted, given the timing of the request to reconsider (after hearing evidence favorable to appellant during presentencing) as well as the lack of any disputed factual element which distinguishes the inclusive from the included offenses, evinces that the members of appellant's court-martial were overcome

by just the desire feared when instructions are given on lesser included offenses—the desire to compromise and find the accused guilty of "something" if they could not agree on the basic issue of guilt. Appellant was guilty, if he was guilty of any offense, at least of voluntary manslaughter.

■ It is clear that appellant shot and killed a man; the assault was consummated, death resulted, and I am therefore unable to consider that he could be guilty of a mere assault offense. *United States v. Craig, supra.* Moreover, I see no indication that appellant's actions were the result of negligence, culpable or otherwise. Defendants, as well as society, are entitled to protection from compromise verdicts; in some cases an accused ought to be able to "take his chances on an 'all-or-nothing' verdict" and forsake the possibility of a " 'merciful verdict.' " *Lightfoot v. United States, supra* at 673. He should be permitted this when the evidence points to greater offenses or none at all, as was the case here. The decision of defense counsel in the first instance, to seek an all-or-nothing verdict, by objecting to any instruction except unpremeditated murder, was warranted by the sole theory framed by the defense and the assessment that the court members could not reach agreement that appellant had not acted in self-defense. While I conclude the instruction on voluntary manslaughter was completely proper, the desire of the defense to prevent an invitation to the court members to render a compromise or inconsistent verdict is obvious. In the belief that a compromise verdict was fostered by advice on offenses not rationally raised by the evidence, it was error for the military judge to instruct, over strong objection, on those offenses which required

finding of a lesser degree of culpability than that required for voluntary manslaughter.[10]

■ This decision is not intended to modify the undisputed duty of the military judge to "bear the primary responsibility for assuring that the jury properly is instructed on the elements of the offenses raised by the evidence as well as potential defenses and other questions of law." *United States v. Graves,* 1 M.J. 50, 53 (C.M.A.1975). *See* paragraph 73a, *Manual for Courts-Martial, 1969 (Rev.).* It does mean, however, that the military judge must scrutinize the evidence before him with great care when there is a timely and vigorous objection to proposed instructions, to ensure that the evidence will rationally support the lesser offenses in view of and as distinguished from the greater offense.

■ The findings and sentence are set aside. In view of our determination that voluntary manslaughter was the least offense of which appellant could rationally be found guilty, there is no basis for ordering a rehearing as to any offense. No lesser offense exists and the verdict of the court-martial precludes a rehearing as to the greater offense inclusive of the offense found. Article 63(b), UCMJ. Accordingly, the Charge is dismissed.

Judge FERRELL concurs.

DONOVAN, Judge (concurring in the result):

I concur in this result for failure of proof, without reaching an analysis of the instructions.[1] At 0300 on 15 July 1977, appellant was performing sentry duty around the permanent residence of the U. S. Ambassador to Egypt. As an assigned member of the

10. We are mindful of *United States v. Johnson,* 1 M.J. 137 (C.M.A.1975), in which the appellant similarly wanted to keep the members from being instructed on lesser included offenses. In that case, however, the evidence did support the instructions and the error was in the judge's failure to instruct on voluntary as well as involuntary manslaughter.

1. The finding does have the ring of a compromise verdict, a compromise which found that

Waldron did wrong, but not so serious a wrong as that charged. It appears, therefore, contrary to footnote 9 of the majority opinion, that several members agreed with my assessment of the evidence, that is, there was not proof beyond a reasonable doubt that Waldron did not shoot in self-defense. A compromise verdict is the very irregularity sought to be avoided by judicial rules on members' instructions.

Marine Security Guard Battalion, he had been ordered to Cairo as part of its Marine Security Guard Detachment. Pursuant to orders originating via his U. S. Marine Corps administrative chain of command and the State Department's operational chain of command, he was in civilian clothes and bore a .38 caliber revolver with nonstandard ammunition on the night involved.

The Government of Egypt also provided a security guard at the Ambassador's residence in view of credible threats on the Ambassador's life and in view of recent, nearby violence. On the night in question, one of these Egyptian guards was shot once in ·the head by appellant; he later died, leading to the charge. There were no witnesses to the shooting. The apparent theory of the prosecution is as follows: Corporal Waldron, an otherwise dutiful Marine, had awakened the non-vigilant victim four times in less that many hours; each time he had found the guard, doubly armed with a machine gun and a revolver, asleep in a chair at his post located inside the compound. When appellant found the Egyptian asleep a fifth time during a single watch, only three and one-half hours into appellant's watch, appellant supposedly grew furious and awakened him in a gruff manner; the victim was startled, reacted to appellant in a predictable way and mutual pushing developed. The Government's case is that Corporal Waldron executed the Egyptian in a fit of frustration and loss of control, only later claiming self-defense in an effort to save himself from punishment. I note a fact inconsistent with the execution theory: the medical examination by Egyptian authorities states that there was "[n]o evidence that the shot was fired at close range." Prosecution Exhibit 6. The Government emphasized the testimony of certain American witnesses who later saw and heard appellant in an effort to show that he was suspiciously calm and unconcerned about the event. There are other, equally convincing witnesses, however, who indicated he was nervous and upset. In any event, the appearance of an accused's demeanor in a shocking situation can be misleading.

The Government sought to attach incriminating connotations to two of appellant's utterances, made shortly after the shooting, which involved a condescending vulgarity and an admission of anger; neither singly nor paired do they establish the required *mens rea*. Moreover, given the earthy nature of barracks jargon, a Marine's vocabulary should not be judged by WEBSTER'S standards.

The record shows that the deceased and other Egyptian guards were allowed by their own authorities to sit down on post; that language barriers existed between appellant and the victim, as they did between other Marines and other Egyptian guards; that security in the area of the shooting was weak; that the threat was sufficiently high that special civilian American guards were also posted nearby; and that the victim and other Egyptian guards had been repeatedly found asleep in that chair, that this had been reported by the senior Marine to State Department officials and that alertness had not improved.

Appellant made some lengthy written statements which were admitted at trial with the defense freely acknowledging their voluntariness. One was made on 15 July, the day of the shooting, appellant asserting that he shot in self-defense because the victim was reaching for his own gun. On 16 July, appellant answered questions in the Egyptian prosecutor's office, again asserting self-defense as the sole motive for the shot. I examine the reasonableness of appellant's actions and beliefs on ·the night of the shooting under the circumstances of human tensions then existing as set out in the record of trial. Reducing the self-defense issue to ultimate questions of reasonableness, we are asked to find it reasonable that appellant killed another man in anger yet find it unreasonable that he shot because he thought he was about to be shot. The military judge correctly instructed the members on the law of self-defense: that two tests exist, one objective and the other subjective. Reasonable grounds must exist whereby one apprehended that death or grievous bodily harm was about to be in-

flicted on himself; and the accused must in fact have had that apprehension. Insofar as it relates to reasonableness, the test is whether, considering all the circumstances, a reasonable, prudent person would believe that there was ground to apprehend death or grievous bodily harm. This determination is made from the viewpoint of an ordinary, prudent adult male and is therefore an objective test. The accused must have believed that the force he used was necessary for protection against death or grievous bodily harm. The test for this element is subjective in nature, that is, the accused is not objectively limited to the use of reasonable force. The accused's experience, age, level of education, intelligence, emotional control, language difficulties with the victim and other circumstances are all relevant in determining his actual belief as to the degree of force necessary to repel what he perceived as an attack. Thus, this second test is viewed through the eyes of the accused. Paragraph 216c, *Manual for Courts-Martial, 1969 (Rev.)* (MCM); *Military Judges' Guide*, Department of Army Pamphlet 27–9, May 1969 (Revised).

Under all the circumstances of this case presented to the Court and of record, I conclude that the issue of self-defense survives the test of reasonable doubt. This conclusion does not flow from "a merciful inclination to permit the accused to escape conviction, nor a doubt prompted by sympathy. . . ." Paragraph 74a(3), MCM. Since self-defense is a total defense as it eliminates an element of the convicted offense and an element of all its lesser included assault offenses, namely unlawfulness, the conviction must be set aside. Article 66(c), UCMJ.

I specifically find, as the majority implicitly does, that the court-martial did have jurisdiction over appellant and the alleged offense. In this regard, appellate defense counsel's novel argument on appellant's supposedly nonmilitary status as an Embassy Marine is totally flawed. No lengthy comment is offered in view of the disposition.