**UNITED STATES**

v.

**James J. DUNCAN, 237 23 1484, Hull Maintenance Technician Fireman (E–3), U.S. Navy.**

**NMCM 87 3935.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 6 March 1987.

Decided 31 May 1989.

Michael F. Fasanaro, Jr., Civilian Defense Counsel.

Lt. Anthony D. Dokurno, JAGC, USNR, Appellate Defense Counsel.

Lt. Scott A. Hagen, JAGC, USNR, Appellate Government Counsel.

Before BYRNE, MIELCZARSKI and RUBENS, JJ.

MIELCZARSKI, Judge:

Appellant was tried by a general court-martial composed of officer members on charges of attempted rape, premeditated murder, and murder during attempted rape, in violation of the Uniform Code of Military Justice (UCMJ), Articles 80 and 118, 10 U.S.C. §§ 880, 918. He was found guilty of premeditated murder, and acquitted of the other charged offenses. The convening authority approved the sentence adjudged by the members of confinement for life, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge.

We find that the military judge erred by permitting testimony during the prosecution's case-in-chief that two years prior to the murder for which he stood trial, appellant attempted to murder his wife. We reverse his conviction.[1]

## I

Appellant was convicted of the murder of his fiancee, Hull Maintenance Technician Third Class Denise Langford. She was manually strangled to death on a deserted stretch of beach, approximately one mile from the enlisted club at the Naval Station, Mayport, Florida. Trial testimony showed that she was last seen alive, by someone other than the appellant, on 10 June 1986 at 2200.

Throughout the afternoon of 10 June, appellant and Langford, along with other crew members of the USS YELLOW-STONE (AD–41), were enjoying a final day of liberty before their ship left Mayport.

Appellant and Langford, in the presence of shipmates, quarreled that afternoon, but were later seen dancing together. In the early evening, appellant approached Langford and suggested that they leave the enlisted club and find a place to make love. Langford declined, angering appellant. A short while later, appellant returned, and insisted that she come with him. They left the club together at about 2200. Later that night, appellant told several shipmates that he and Langford had walked down to the beach, resolved their quarrel, and made love on the sand. He left to swim for a short while, he said, and when he returned she was not where he had left her.

Langford's body was found six days later, badly decomposed, among some bushes on the beach. She had been strangled, and was found naked and spread-eagled, with her clothes torn and laying about her. Though she could be identified only by dental records, her stomach contents were intact. Analysis of those contents placed her death three to four hours after her last meal. Langford had eaten on 10 June sometime between 1730 and 1900.

Prior to trial, the military judge denied appellant's motion *in limine* which sought to preclude testimony of his former wife, Terri Crawford, and a former lover, Linda Gomes. Gomes, a civilian, testified that she had been a member of the USS YELLOWSTONE crew and had been appellant's lover in 1984 during his marriage to Crawford. Appellant proposed to Gomes and told her that he would arrange for his wife to die in a scuba accident so that they could then be married. Gomes testified that appellant reasoned that killing Crawford was less expensive than divorcing her. A week after this discussion, which Gomes did not take seriously, appellant called her and said that he was taking his wife scuba diving the next day, and that he could not see her for a while because he had to play the role of the "mourning husband." He called the

1. Appellate defense counsel states the issue as follows:

THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF THE APPELLANT BY DENYING APPELLANT'S MOTION IN LIMINE AND PERMITTING THE TESTIMONY OF HIS FORMER WIFE AND OTHERS THAT HE HAD ATTEMPTED TO KILL HIS FORMER WIFE AND FURTHER COMPOUNDED THIS ERROR WITH THE LIMITING INSTRUCTION HE PROVIDED THE COURT MEMBERS.

next day and said his plan had failed. He and Crawford later visited Gomes, and appellant apologized to Gomes in private, saying that he would have to get a divorce after all, and that his plan had failed because Crawford had sensed something was wrong and would not go into deep enough water for appellant's scheme to work.

Crawford then testified that she and appellant had been married from May 1983 to May 1984. She had expressed an interest in learning to scuba dive and after appellant returned from deployment in April 1984, he told her that he would now teach her. They arrived at a lake, and appellant was anxious to begin the lesson. They went to the bottom near the shore, in water about 10–12 feet deep. Appellant attempted to teach his wife to clear her face mask of water by pulling it away from her face and blowing into it. He did it himself several times, encouraging her to follow suit. Worried about ending up with a mask full of water, she refused to pull off her mask. Appellant then reached up and pulled her mouthpiece out of her mouth. In a panic, she pushed away from him and surfaced. Appellant followed her out of the water, and was angry with her, stating that she had to know what she was doing in case something ever happened while diving. Later that evening, appellant told Crawford he did not love her anymore and wanted a divorce.

The military judge permitted the use of this testimony in the prosecution's case-in-chief, ruling that:

> The accused's motive for attempting to kill his former wife is similar to his motive in the present case. The accused was losing or had lost interest in the victim, he was engaged in the pursuit of other women, and he wished to terminate the relationship with the victim. *The evidence is relevant to show the probable existence of a motive for the accused to kill the victim and that he could harbor the specific intent to perform such a crime....*
>
> That crime, like attempted rape and premeditated murder in the present case, requires specific intent. With regard to the prior incident, accused's overt act in pulling his former wife's breathing device from her mouth while underwater was evidence of his intent to kill, particularly when coupled with his earlier statement that he would kill her while scuba diving. The victim in both cases were women romantically involved with the accused, and in both cases the accused wished to terminate those relationships. Both cases involved death or potential death in or near water by asphyxiation. *The prior conduct is evidence that the accused did specifically intend to kill the victim.... In addition his state of mind when he attempted to kill his former wife ... demonstrates that he was capable of the specific intent required for premeditated murder.* Without this evidence it is highly unlikely the accused will be convicted of any of the charged offenses. Furthermore, there are no viable evidentiary alternatives....

(Emphasis supplied.)

## II

Military Rule of Evidence (Mil.R.Evid.) 404 codifies a principle of long standing in our law that evidence of one crime is inadmissible to prove disposition to commit crime, from which the members may infer that the defendant committed the crime charged. *See United States v. Brooks,* 22 M.J. 441 (C.M.A.1986). The dangers inherent in the use of evidence of past crimes, wrongs, and acts to prove the guilt of an accused on different and perhaps unrelated charges are best described by Professor Wigmore:

> [T]he natural and inevitable tendency of the tribunal—whether judge or jury—is to give excessive weight to the vicious record of crime thus exhibited, and either to allow it to bear too strongly on the present charge, or to take the proof of it as justifying a condemnation irrespective of guilt of the present charge.

WIGMORE, EVIDENCE, Vol. 1, s. 194 (and cases cited therein).

 Although evidence of other crimes, wrongs, or acts is inadmissible to

prove criminal propensity, it may be admissible when it is relevant for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Mil.R. Evid. 404(b); *Cf. United States v. Gamble*, 27 M.J. 298 (C.M.A.1988); *United States v. Hicks*, 24 M.J. 3 (C.M.A.1987). In ruling on the admissibility of evidence of other crimes or wrongs, the military judge must consider (a) whether the evidence tends to prove that the accused committed a prior crime or wrong, (b) the purpose for which the evidence is offered, and (c) whether its probative value is substantially outweighed by the danger of unfair prejudice to the accused. *United States v. White*, 23 M.J. 84 (C.M.A.1986). If the military judge determines that the disputed proof is evidence of "other crimes, wrongs, and acts" within the meaning of Rule 404(b), and that the evidence is sufficient for a court member to reasonably conclude that the accused in fact committed the extrinsic offense, he must then consider the purpose for which it is offered. *See Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988); *United States v. Mirandes–Gonzalez*, 26 M.J. 411 (C.M.A. 1988). The evidence must be excluded when it tends to show nothing but the character of the actor, and that he acted in conformity therewith. In other words, as with Federal Rule of Evidence 404(b), the challenged evidence must be probative of a material issue other than character. Evidence of other crimes can be used to prove the conduct of a person if the inference to conduct can be made without the need to infer the individual's character as a step in the reasoning from the extrinsic acts to the conduct presently charged. Put another way, does the challenged evidence require the fact-finder to infer from behavior on one occasion something about the nature or character of the actor and then to infer from that how the person probably behaved on another occasion? Is the sole connection between the events that the fact-finder believes that a certain type of person would act the same way both times? If so, the challenged evidence is offered to prove criminal propensity and must be excluded. Once the military judge determines that the members could find that the defendant committed an extrinsic act and that it is relevant to an issue other than the defendant's character, the military judge must find the evidence possesses probative value that is not substantially outweighed by its prejudicial impact. *Brooks*, 22 M.J. at 444. *See* Mil.R.Evid. 403. Nonetheless, the Court of Military Appeals has expressed concern with the dangers of admitting such evidence even if it meets the requirements of Mil.R.Evid. 403 and 404(b). *See, e.g., United States v. Brannan*, 18 M.J. 181, 185 (C.M.A.1984).

■ At appellant's trial the military judge ruled that the challenged evidence was admissible to "show the probable existence of a motive for the accused to kill the victim and that he could harbor the specific intent to perform such a crime." However, after the testimony of Gomes and Crawford, the military judge instructed the members that the testimony could be considered by them only for the purpose of its "*tendency, if any, to prove the accused was capable of forming a specific intent to kill....*" and that they could not conclude from this evidence that the "accused is a bad person or has criminal tendencies and that he, therefore, committed the offenses charged." (Emphasis supplied.) Because the military judge limited the members' consideration of this evidence solely to the issue of the accused's capability of forming a specific intent to kill, we cannot consider its possible admissibility for a different purpose. *See United States v. Rappaport*, 22 M.J. 445, 446 (C.M.A. 1986).

### III

■ The Government's theory of the case was that (a) Langford's death was a part of, or as a result of, their sado-masochistic sexual practices, or (b) that he killed her to end the relationship, or (c) that as they were both to leave the Navy within the next month, and they were beneficiaries of the other's life insurance policies, he killed her for financial gain. The testimony of Gomes and Crawford clearly pro-

vided a basis for the members to conclude that appellant had, in fact, attempted to murder his former wife. The Government claims that because intent is an issue whenever it is an element of the charged offense, evidence that appellant attempted to kill his former wife is relevant because attempted murder requires the same specific intent to kill as does the charged offense of premeditated murder.[2] The defense states that there is no connection or nexus between the alleged attempted murder of Crawford and evidence in this case, nor any evidence of a plan by appellant to harm or kill Langford, and that therefore the testimony of Crawford and Gomes concerning events in April 1984 is not relevant as to whether appellant killed Langford in June 1986.

■■■ We agree with the defense counsel that the challenged evidence shows propensity or predisposition of the appellant to commit murder. There is no reason to conclude that appellant's attempted murder of his former wife was probative on the issue of appellant's intent that night in June 1986 except by resort to the forbidden inference as to character. That he wished to rid himself of Crawford to marry Gomes, that he discussed arranging Crawford's death with Gomes, and that he planned and committed an act designed to make that so, has no probative value concerning appellant's intent as to Langford

two years later. *United States v. Ferguson,* 28 M.J. 104 (C.M.A.1989).

In sum, we find that the testimony of Gomes and Crawford concerning appellant's alleged attempt to kill Crawford in April 1984 to be irrelevant to show appellant's specific intent to kill Langford in 1986. We fail to see a connection between the two acts except to portray appellant as a heartless, diabolical, would-be murderer. One cannot draw a connection between the two incidents without first assuming that, because appellant harbored the specific intent to attempt murder on his wife in April 1984, that he was capable of forming the specific intent to murder a different woman in June 1986. Indeed, the military judge's own phrasing, that appellant "was capable of the specific intent required for murder," is nothing else but an assessment that appellant had a murderous disposition. In fact, even were there a connection between the acts, justifying admission of this evidence, the undue prejudice to appellant resulting from this evidence is plain; no one could hear such evidence, delivered in such detailed fashion, relating appellant's depravity in planning and attempting to murder his wife, done to avoid the expense of a divorce and to marry another woman, and not draw the inference that appellant was an evil person. The issue in this case was not whether appellant was capable of forming the specific intent to kill, but whether on that night in June 1986 he had the specific intent to kill Langford.[3] Because

---

2. The recent case of *Thompson v. United States,* 546 A.2d 414 (D.C.1988), cited with approval by the Court of Military Appeals in *Gamble,* 27 M.J. at 305, provides a useful framework to analyze the issues involved in determining whether evidence of uncharged misconduct is admissible to determine intent of an accused:

(1) whether, and to what degree, intent as an issue can be distinguished from predisposition to commit the crime;

(2) whether intent is a genuine, material and important issue, rather than merely a formal one;

(3) whether the trial judge made his decision whether or not to admit the evidence at an appropriate time, when information as to all pertinent factors was available;

(4) whether the trial judge's instructions to the jury could and did resolve any issue of prejudice.

In *Thompson,* that Court held that when a defendant denies, by a plea of not guilty, partic-

ipation in the conduct which is alleged to constitute the crime, intent is ordinarily not a material issue for purposes of admitting uncharged misconduct as substantive evidence against the accused. The Court reasoned that if proof of other crimes were admissible simply because intent must be shown, whether the defendant contests it or not by the manner and nature of his defense, then such inherently prejudicial evidence would become routinely admissible regardless of whether the Government required it to prove the defendant guilty.

3. The military judge summarized the extent of the Government's evidence not challenged in appellant's motion *in limine* as follows:

.... [T]he accused and victim were engaged to be married; that they were together during evening hours on 10 June 1986 at the Enlisted Beach Club ...; that they went for a walk together on the beach; that the accused stated he and the victim made love on the beach

the evidence that appellant attempted to kill his wife in April 1984 showed only that appellant was of evil, murderous character and therefore acted in conformity with that character in June 1986, the military judge's attempt to limit the members' consideration of this evidence to an ostensibly proper purpose could have no legal or practical effect. We cannot say that the members in this case were not influenced by this challenged evidence, nor that its erroneous admission had but a slight effect on their resolution of the issues in this case. *United States v. Barnes*, 8 M.J. 115 (C.M.A. 1979).

The findings of guilty and the sentence are set aside. A rehearing may be ordered.

Chief Judge BYRNE and Judge RUBENS concur.

after which he went swimming; that when the accused returned to where he left the victim she was gone and he could not find her; that the accused returned to Enlisted Beach Club about one hour after he had departed with the victim; that her death was the result of asphyxiation; and that the time of her death was during the evening hours of 10 June 1986 that generally coincided with the time she had been with the accused.

This was not the full extent of the Government's case, which also included, among other things, evidence of appellant's sado-masochistic sexual history with the victim, a history of violence in the relationship between appellant and the victim, that appellant stood to gain financially from Langford's death, and medical testimony that asphyxiation by manual strangulation in this case required force applied for two minutes sufficient to crush the victim's larynx. Given the amount and type of evidence available to the members to infer intent, it cannot be said that it was "highly unlikely that without this evidence appellant would not be convicted of any of the charged offenses."