UNITED STATES

v.

**James J. DUNCAN, 237 23 1484. Hull Maintenance Technician Fireman (E–3), U.S. Navy.**

**NMCM 87 3935R.**

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 7 Nov. 1989.

Decided 19 Nov. 1992.

**669**

LT Mary L. Livingston, JAGC, USNR, Appellate Defense Counsel.

CDR Philip D. Cave, JAGC, USN, Appellate Defense Counsel.

Capt A. Diaz, USMC, Appellate Government Counsel.

Before WILLEVER, C.J., and STRICKLAND, J., and ORR, Senior Judge.

ORR, Senior Judge:

After his original conviction for premeditated murder was set aside by this Court, *United States v. Duncan*, 28 M.J. 946 (N.M.C.M.R.1989), the appellant was again charged with that offense at a second general court-martial which is now before us for review pursuant to Article 66, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 866.[1] Contrary to his pleas at this second trial, the appellant was convicted by a panel of officer and enlisted members of the lesser included offense of voluntary manslaughter in violation of Article 119, UCMJ, 10 U.S.C. § 919. He was sentenced to confinement for 10 years, forfeiture of all pay and allowances, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged.

The appellant and his fiancee, who had a somewhat stormy and on-again/off-again relationship, were together at the EM Club near the beach at Naval Station, Mayport, Florida, during the early evening of 10 June 1986. Shortly before they left together about 2100–2200, they had an argument about engaging in sexual intercourse on the beach. The appellant suggested the idea, and his fiancee objected ostensibly because she was greatly embarrassed when they had recently gotten caught engaging in such activity along the same beach. In any event, the appellant became angry and left his fiancee's company stating, "I'll get it somewhere else." His fiancee, in tears, conveyed this information to a female shipmate who attempted to console her. The appellant returned shortly thereafter and abruptly told his fiancee to get her things, that they were leaving, and the two of them departed the club together. His fiancee was not seen alive again.

The appellant reappeared at the EM Club about an hour later looking for his fiancee. The first person the appellant apparently spoke to testified that the appellant said he and his fiancee had been out on the beach, she had gotten up, told the appellant she would be right back, and walked away but had not returned. The appellant said nothing to that individual about leaving his fiancee on the beach to go for a swim and being unable to find her when he returned. To those friends and shipmates he spoke to thereafter, however, the appellant told them that he and his fiancee went for a walk along the beach, had made up after their argument, and had engaged in sexual intercourse near the jetty. After intercourse, the appellant said he went for a swim for about 10–15 minutes while his fiancee remained on the beach. When he came out of the water, he claimed his fiancee was gone and only his clothes and their beach bag remained where he had left her.

When his fiancee failed to report the following day for morning muster on board ship, the appellant requested permission to leave the ship to look for her, but the request was denied because the appellant had duty and the ship was due to depart the next day for Norfolk, Virginia. The

---

1. Oral argument in this case was heard before Lawyer Class No. 92050 at the Naval Justice School, Newport, Rhode Island, on 2 October 1992.

appellant asked a shipmate who was able to leave the ship to walk down to the beach and through the clubs to see if he could find anything or find the appellant's fiancee. However, the appellant neglected to give the shipmate any specific information about where he was on the beach the night before, and the shipmate went to the beach with the impression that the appellant and his fiancee had been on the beach just in back of the EM Club. Consequently, the shipmate never got closer than about a quarter of a mile of the jetty where the appellant told others he had gone for his post-coital swim.

Six days after that swim, in the late afternoon of 16 June, his fiancee's badly decomposed body was discovered in the dunes above the beach about a mile from the EM Club and about 900 feet from the jetty. She had been manually strangled in circumstances which clearly suggest she was sexually assaulted at the time of or immediately preceding her death. She was on her back, pressed into the sand, naked, and spread-eagled. Her T-shirt and bikini bottoms, both torn, were found near her body along with the shorts she had been wearing. Her tennis shoes were at her feet with her socks folded inside them, and her wallet, with currency and her ID card, was found inside her shorts. She was identified through her dental records, and an analysis of her stomach contents placed her death at three to four hours after her last meal. Friends she had been with at the EM Club the evening of 10 June testified she had eaten at the club about 1800.

The appellant assigns two errors in the conduct of this second trial.[2] Both of these errors are based on the appellant's contention that there was no evidence of sufficient provocation to justify his conviction for voluntary manslaughter. In the first assignment, the appellant asserts that the military judge erred by instructing the members on the lesser included offense of voluntary manslaughter over defense objection because the evidence did not establish sufficient provocation, and in the second he asserts that the evidence is legally and factually insufficient to support a finding of guilty to voluntary manslaughter because there was no evidence to show that the appellant acted in the heat of sudden passion caused by adequate provocation.

Proposed instructions were discussed in an out-of-court conference pursuant to Rule for Courts–Martial 802. However, the trial defense counsel stated his objection to the military judge's decision to give the lesser included offense instruction for voluntary manslaughter on the record and cited the lack of adequate provocation. Record at 1195. The military judge overruled the objection and stated only that "provocation did exist in numerous areas enough to raise that particular issue." *Id.*

We have said:

A military judge must instruct members on any and all lesser included offenses reasonably raised by the evidence adduced at trial.... Even testimony that is implausible or incredible is sufficient to raise an instructional issue.... The duty to instruct arises whenever some evidence is presented to which the fact finder might attach credit if they so desire. In making the decision on whether to instruct on a lesser included offense, the military judge should resolve all doubt in favor of the accused....

*United States v. Anderson*, 21 M.J. 751, 754 (N.M.C.M.R.1985) (citations omitted).

But where the defense has objected to instructions on lesser included offenses, the Court of Military Appeals has said:

[t]he ... [military judge] may accede to defense counsel's request and instruct only on those issues of guilt or innocence which are chosen by the accused's lawyer. If he permits the defense to gam-

---

**2.** I. THE MILITARY JUDGE ERRED BY INSTRUCTING THE MEMBERS, OVER DEFENSE OBJECTION, ON THE LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER WHERE THE EVIDENCE AT TRIAL DID NOT ESTABLISH SUFFICIENT PROVOCATION.

II. THE EVIDENCE IS LEGALLY AND FACTUALLY INSUFFICIENT TO SUPPORT A FINDING OF GUILTY WHERE NO EVIDENCE EXISTS TO SHOW APPELLANT ACTED IN THE HEAT OF SUDDEN PASSION CAUSED BY ADEQUATE PROVOCATION.

ble, in cases where no question of adequacy of counsel is raised, no claim of error will be recognized here. But if he has some doubt as to the wisdom of counsel's choice, or believes for some other reason that instructions on lesser included offenses should be given, and if the evidence supports his conclusion that those covered are in issue, he does not err if he refuses to permit the accused to gamble away his statutory rights. In the final analysis, the ultimate choice must rest in his hands....

*United States v. Wilson*, 7 C.M.A. 713, 23 C.M.R. 177, 180–181 (1957).

■ The elements of unpremeditated murder and voluntary manslaughter are identical. *Compare* Manual for Courts-Martial, United States, 1984, (MCM), Part IV, ¶ 43b(2) *with* MCM, Part IV, ¶ 44b(1). The Manual for Courts-Martial differentiates between the two by stating that "[a]n unlawful killing ... is not murder but voluntary manslaughter if committed in the heat of sudden passion caused by adequate provocation." MCM, Part IV, ¶ 44c(1)(a). This requirement encompasses both subjective and objective aspects. An accused must, subjectively, be in the heat of sudden passion when the killing occurs, but what provokes that passion "must have an objective existence outside the mind of the one who kills unlawfully...." *United States v. Garza*, 37 C.M.R. 814, 828 (A.B.R.1966); *see also United States v. Seeloff*, 15 M.J. 978 (A.C.M.R.1983). Words alone are not adequate provocation. MCM, Part IV, ¶ 44c(1)(b); *United States v. Maxie*, 9 C.M.A. 156, 25 C.M.R. 418 (1958); *United States v. Edwards*, 4 C.M.A. 299, 15 C.M.R. 299 (1954).

■ Before giving an instruction on voluntary manslaughter, the military judge must first determine whether "the alleged provocation would have any reasonable tendency to produce sudden and uncontrollable anger and heat of blood in the ordinary man." *United States v. Bellamy*, 15 C.M.A. 617, 36 C.M.R. 115, 118 (1966). In most of the cases where the question of voluntary manslaughter as a lesser included offense is raised, the accused has admitted the unlawful killing, and the factual dispute centers on claims of self defense, accident, or some other circumstance surrounding the death that would exculpate the accused. Here, the appellant denied any involvement in the victim's death whatsoever. What transpired between the appellant and his fiancee after they left the EM Club and leading up to the victim's death was never really put in issue and is open to considerable speculation. Other than the victim's torn clothing, there was no evidence of a struggle at the place where the victim's body was found, and in the opinion of experts, she was killed where her body was found.

■ At best, the Government's evidence of any significant conflict between the appellant and his fiancee prior to their departure from the EM Club is the victim's refusal to engage in sexual intercourse with the appellant that evening on the beach. Circumstantially, the members might have reasonably inferred that, when the appellant indicated to others that they engaged in sexual intercourse on the beach, the act was not consensual and the victim was killed as a consequence of her refusal. We find, however, that a woman's mere refusal to engage in sexual intercourse, even with her fiancee, could not as a matter of law have a reasonable tendency to provoke "sudden and uncontrollable anger and heat of blood in the ordinary man." Consequently, we conclude that the military judge erred by instructing the members on voluntary manslaughter when there was no evidence of adequate provocation to justify submitting that issue to the members.

It is obvious from their findings, however, that the members put no credence in the appellant's version of events as recounted both by the friends and shipmates he spoke to in the days following his fiancee's disappearance and by the Naval Investigative Service agent he spoke to after her body was discovered. Likewise, the members did not accept the defense theories that some unknown third party could have been on the beach and attacked the victim while the appellant was swimming or that the victim might have been killed after the

appellant left the area aboard his ship only to have her body reappear along the beach where she was last seen by the appellant. The members concluded beyond a reasonable doubt that the appellant killed his fiancee and that he intended to do so. We are equally convinced. By instructing the members concerning provocation and heat of passion as part of the lesser included offense of voluntary manslaughter, the military judge provided a boon to the appellant that he had never put in issue.

Even though we have concluded that the military judge erred, we fail to see how the appellant was prejudiced by the error since the members had to have found all of the elements necessary to have convicted the appellant of the greater offense of unpremeditated murder. In *United States v. Bartholomew*, 1 C.M.A. 307, 3 C.M.R. 41 (1952), the Court of Military Appeals stated:

> The ... issue concerns the propriety of findings of guilty of voluntary manslaughter in a case in which the accused was charged with premeditated murder. Appellate defense counsel contends that an essential element of the crime of voluntary manslaughter is "heat of sudden passion brought about by adequate provocation;" that the record contains no evidence of this ingredient; and that the findings of guilty of voluntary manslaughter cannot therefore, stand. Conceding error arguendo, we think counsel is in no position to complain, since petitioner was found guilty of the lesser offense, whereas in our opinion the evidence clearly supports a greater.
>
> ....
>
> ... Even if the court-martial in the present case was not justified in finding petitioner guilty of voluntary manslaughter, it did so in fact—and we fail to see how such error could possibly have harmed the accused. The evidence clearly establishes murder. Most jurisdictions of the United States have held that if the evidence warrants conviction in a higher degree of homicide than that found, the appellant may not complain even though the lower degree in fact

> found is not supported by the evidence....

3 C.M.R. at 46–47 [citations omitted]; *see also United States v. Ginn*, 1 C.M.A. 453, 4 C.M.R. 45 (1952) (accused was in no position to complain when he was convicted of voluntary manslaughter even though the law officer refused to instruct on that offense and Court concluded this was not error because there was "not one scintilla of evidence" to show killing in the heat of passion); *United States v. Carmon*, 32 C.M.R. 885 (A.B.R.1962) (accused, who was convicted of involuntary manslaughter but never claimed to have acted in heat of uncontrollable passion, cannot complain where the evidence established his guilt of unpremeditated murder); *cf. United States v. Lee*, 3 C.M.A. 501, 13 C.M.R. 57 (1953) (court is not required to find on appeal that degree of murder was in issue when accused is found guilty of unpremeditated murder even though law officer did not instruct on that lesser included offense).

As part of these assignments of error, the appellant complains that, more than likely, the members reached a compromise verdict. He points to the fact that, at one point in their deliberations, the members requested reinstruction on the procedure for reconsideration of findings. There is nothing to indicate, however, what conclusions the members were reconsidering or if they actually reconsidered their findings at any point. The appellant also points to the fact that, during their deliberations on sentence, the members requested instructions on the procedure for reconsidering their conclusions concerning an appropriate sentence. The appellant fails to explain and we are unable to discern how this request concerning the sentence or the fact that the appellant was awarded the maximum imposable punishment for voluntary manslaughter supports the idea that the members' verdict was compromised.

The cases the appellant cites concerning the risk of compromised verdicts involve issues that are not raised in the case before us. In *United States v. Waldron*, 9 M.J. 811 (N.M.C.M.R.1980), *aff'd*, 11 M.J. 36 (C.M.A.1981), we held that an accused originally charged with murder could not prop-

erly be convicted of the intentional infliction of grievous bodily harm where there was no factual dispute that the accused had caused the victim's death. In our decision we quoted the U.S. Supreme Court, which had stated: "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." 9 M.J. at 814 (quoting *Sansone v. United States*, 380 U.S. 343, 349–50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965)). To apply that holding to the present case, where the elements between unpremeditated murder and voluntary manslaughter are identical and where the *lesser* offense requires the members to find extenuating facts that are not required for conviction of the greater offense, is to turn the rationale on its head.

In addition, we stated in *Waldron* that there simply was "no reasonable interpretation of the evidence which would rationally support instruction upon either involuntary manslaughter or the assault offenses." 9 M.J. at 817. There is nothing "irrational" about the findings in this case. The members were simply allowed to consider possibilities concerning the appellant's state of mind which the evidence, based on the applicable objective standard, did not warrant. We fail to see the same fundamental inconsistency in the case before us as appeared in *Waldron*. Here, the findings are not factually inconsistent with the charged offense, and the appellant's conviction for voluntary manslaughter does not present the same enigma confronted in *Waldron*. Even though, as a technical matter, adequate provocation could not legally exist on the evidence presented, we conclude that the appellant has suffered no prejudice.

Accordingly, the findings of guilty and the sentence, as approved on review below, are affirmed.

Chief Judge WILLEVER and Senior Judge STRICKLAND concur.