**UNITED STATES, Appellant,**

v.

**Larry S. WALDRON, Corporal, U. S. Marine Corps, Appellee.**

No. 39,505.
NCM 78 1382.

U. S. Court of Military Appeals.

April 27, 1981.

For Appellant: *Thomas B. Kenworthy,* Esquire (argued).

For Appellee: *Lieutenant J. G. Van Winkle,* JAGC, USNR (argued); *Commander T. C. Watson, Jr.,* JAGC, USN (on brief).

*Opinion*

FLETCHER, Judge:

Pursuant to Article 67(b)(2), Uniform Code of Military Justice, 10 U.S.C. § 867(b)(2), the Judge Advocate General of the Navy has certified to us the following question:

> WAS THE UNITED STATES NAVY COURT OF MILITARY REVIEW CORRECT, AS A MATTER OF LAW, IN SETTING ASIDE THE ACCUSED'S CONVICTION OF THE OFFENSE OF ASSAULT IN WHICH GRIEVOUS BODILY HARM WAS INTENTIONALLY INFLICTED AND DISMISSING THE CHARGE, ON THE BASIS THAT THE MILITARY JUDGE IMPROPERLY INSTRUCTED THE MEMBERS ON THE LESSER INCLUDED OFFENSES, OTHER THAN VOLUNTARY MANSLAUGHTER, WHERE THE ACCUSED OBJECTED AND WHERE THERE WAS NO ISSUE OF FACT AS TO EITHER THE DEATH OF THE VICTIM OR THE CAUSE OF DEATH?

The perimetric facts are easily delineated.

Appellee appeared before a general court-martial with members at Quantico, Virginia. Contrary to his plea of not guilty to a murder charge, the members originally found him guilty of the lesser included offense of voluntary manslaughter. During presentencing evidence (which was very favorable to the accused), the jury requested reinstructions so as to reconsider their findings. Over defense counsel's strenuous objection, the military judge reinstructed the members on the following offenses: unpremeditated murder, voluntary manslaughter, involuntary manslaughter, intentional infliction of grievous bodily harm, assault with a dangerous weapon, and assault and battery.

Both documentary evidence and stipulated testimony admitted at trial establishes that the victim, Zakaria Ismail Khalil Hammod died as a result of a gunshot wound to his head, inflicted on July 15, 1977, by appellee. A pretrial statement of appellee, admitted as prosecution exhibit 7, was summarized fairly by the staff judge advocate as follows:

On 15 July 1977, I was assigned to Post 2, American Embassy, Cairo, together with an Egyptian guard, Zakariah Ismail Khalil Hammod. I found Khalil asleep and attempted to awaken him. My actions startled him, and he began to curse me. I pushed him back to calm him, but he reached for his pistol, which was in his waistband. He was also armed with a machine gun, which was on the chair in which he had been sleeping. I believed that in reaching for his gun, he wanted to shoot me, and felt that my life was in danger. When he tried to get his gun out, I drew my weapon and fired one round, hitting him in the left side of the face. As I was faster than he, he never got his gun out. I did not aim at his head. I pulled the gun out quickly and shot, and he was hit in the head. I did not want to kill him. I acted hastily. I could not have stopped him any other way than shooting him because he had reached for his gun. Although we had a misunderstanding, there were no differences between us.

This evidence was uncontroverted at trial. Furthermore, evidence of record appears showing that appellee killed the victim out of fear. The members had before them appellee's confession admitting intentional infliction of a gunshot wound on the victim.

During an Article 39(a) session on pre-findings instructions, defense counsel objected to instructions on any of the lesser included offenses to unpremeditated murder. The rationale for this was the absence of any rebuttal to government evidence that appellee shot the victim intentionally, causing his death. Defense requested an all-or-nothing instruction that if he was not guilty of murder, he was innocent.

This was denied both at this phase and later when the members requested reinstruction.

The United States Navy Court of Military Review set aside the findings and sentence and ordered the charge dismissed. 9 M.J. 811 (1980). I concur in the well-reasoned opinion of Chief Judge Cedarburg and adopt it as my own.[1] The certified question is answered in the affirmative.

The decision of the United States Navy Court of Military Review is affirmed.

EVERETT, Chief Judge (concurring in the result):

In its brief and oral argument in this Court, the Government took a position that apparently differed materially from that on which it had relied before the United States Navy Court of Military Review. Now it concedes that the military judge erred when, over vigorous defense objection, he instructed the court members on the lesser included offense of assault wherein grievous bodily harm is intentionally inflicted.[1]

---

1. I expressly do not adopt footnote 9 and do not comment on this issue.

1. The Government brief recites that:

Instructions on lesser-included offenses in the federal system are proper only "where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States*, 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965). For instance, where an accused is charged with possession of hundreds of pounds of marijuana with the intent to distribute, and where the evidence shows he did possess that amount, there is no reasonable dispute over intent to distribute, and there should be no instruction on the lesser-included offense of possession of marijuana. *United States v. Rogers*, 504 F.2d 1079, 1084 (5th Cir. 1974). There is a dispute over an element either where there is sharply conflicting evidence regarding it, or where the absence of it is fairly inferable from the evidence. *United States v. Sinclair*, 444 F.2d 888, 889 890 (D.C. Cir. 1971). There is not a dispute merely because the jury is free to disbelieve credible and unrebutted testimony. *United States v. Harary*, 457 F.2d 471, 477 (2d Cir. 1972).

Furthermore, during oral argument, Government appellate counsel candidly acknowledged that, if the court members had initially returned a finding of assault, rather than of voluntary manslaughter, the finding could not have been allowed to stand.

However, the Government seeks to escape the effects of its concessions—and to uphold the assault finding—by relying on the Manual provision that "[t]he court may also reconsider any finding of guilty on its own motion at any time before it has first announced the sentence in the case." Para. 74d(3), Manual for Courts-Martial, United States, 1969 (Revised edition). In this respect, the members of a court-martial have a power which is not shared by Federal criminal jurors, who after returning their verdict have no further role to perform. According to the Government, the power granted court-martial members by paragraph 74d(3) includes the authority to grant clemency to an accused by replacing the findings of guilty originally returned with findings more favorable to the accused—either not guilty or guilty of some lesser included offense. Presumably this leniency would be induced by defense evidence in mitigation and extenuation.

I cannot accept the government's view that the Manual's grant to court-martial members of the power to reconsider findings of guilty at any time prior to announcement of sentence was intended to authorize the rendition during pre-sentence proceedings of findings based on mercy and not reasonably related to the evidence before the court members. While it is conceivable that evidence presented during the pre-sentencing portion of a trial might create reasonable doubt on the part of the court members as to some element of an offense of which they had convicted an accused and thereby lead appropriately to reconsideration of the original findings and to new findings more favorable to the accused, nothing of that sort occurred in the case at hand. Instead, the Government speculates that, after the court members had rejected the appellant's self-defense argument and returned a finding of voluntary manslaughter, they extended leniency to appellant and, because of his evidence in mitigation and extenuation, replaced the original finding with a finding of assault. In my view, any such action by the court members was not contemplated—or authorized—by the Code or by the Manual.

While I am not convinced of the correctness of the government's concession in the case at hand.[2] I have concluded that, under the circumstances of the present case, it may appropriately be accepted. Once accepted, the concession requires dismissal of the charges since the finding of guilty of assault cannot be salvaged by the argument which the Government has presented.

COOK, Judge (dissenting):

The Court of Military Review and Judge Fletcher apparently consider significant in-

---

2. The situation here is different from that which exists where the instruction as to a lesser included offense leads a jury to find a defendant guilty of an offense of which, according to all the evidence, he could not have been guilty. For example, where the evidence shows that a defendant's death-inducing conduct was intentional, a judge would err in instructing on involuntary manslaughter, and a verdict of guilty of that offense could be successfully attacked. Cf. State v. Ray, 299 N.C. 151, 261 S.E.2d 789 (1980). However, in the case at hand there was evidence that appellant was guilty of an assault in which grievous bodily harm was intentionally inflicted; and, if the victim had not died, appellant could appropriately have been convicted of this offense. I am not convinced that the absence of dispute at trial as to the issue of causation necessitates the conclusion that the military judge has erred if he instructs the court members on the lesser included offense of assault—at least, in the absence of defense objection. Moreover, these precedents—including those cited by the Court of Military Review—suggest that under such circumstances any error would not be prejudicial; the accused can hardly complain if he is convicted of an offense established by the evidence but less serious than another of which he could have been convicted on the same evidence. Finally, despite the precedents cited by the Court below, I still entertain doubts that, if the finding of assault had initially been returned by the court members, reversal would have been required, even though the defense counsel had objected to the judge's instructing on that lesser included offense.

dividual military counsel's effort to have the case submitted to the court-martial members without instruction on offenses lesser than that charged. I think it appropriate, therefore, to point out, preliminarily, that defense counsel did not intend to relieve the trial judge of responsibility to instruct on those lesser offenses which counsel said "must be instructed on as a matter of law." Counsel's remarks indicate that, despite his insistence on limited instructions, he wanted to be certain that if the trial judge omitted instruction on any lesser offense that had support in the evidence and a conviction eventuated, the judge's omission would not be held to be "defense-induced error." *See* my dissenting opinion in *United States v. Grunden*, 2 M.J. 116, 124 (C.M.A.1977). I, therefore, see nothing in the defense position that is relevant to this Court's consideration of the correctness of the trial judge's instructions.

Turning to the instructional issue, the Court of Military Review determined, and apparently Judge Fletcher's agrees, that the all-or-nothing defense position was wrong. The evidence, the court said, made it "clearly proper for the military judge to instruct on voluntary manslaughter." 9 M.J. 811, 817 (1980). The court, however, discerned no evidence to authorize instruction as to the offense finally found by the court-martial members. Judge Fletcher agrees with that conclusion. Chief Judge Everett does not. He indicates there is "evidence that appellant was guilty of an assault in which grievous bodily harm was intentionally inflicted,"[1] and he states he is "not convinced"[2] that the trial judge erred

in instructing on the offense found. Notwithstanding this view of the evidence, Chief Judge Everett refuses to overturn the decision of the Court of Military Review because of government counsel's mistaken concession of error in this Court. I agree with the Chief Judge's conclusion that evidence exists to support the trial judge's instruction on the offense found, but I do not believe government counsel's mistaken concession should control the Court's decision.

In *United States v. Patrick*, 2 U.S.C.M.A. 189, 191, 7 C.M.R. 65, 67 (1953), government counsel "conceded error and prejudice to appellant in the ... [trial judge's] failure to instruct on the elements" of an offense charged. After examining the issue "with care," the Court agreed with government counsel, but it explicitly eschewed "accepting blindly admissions of error." *See United States v. Cain*, 5 M.J. 698, 700 (N.C.M.R. 1978). Unlike Chief Judge Everett, I discern nothing in "the circumstances" of the case that impels me to overturn the findings of guilty because the government's lawyers have mistakenly attributed error to the trial judge.[3]

The principal opinion posits that the accused "shot the victim intentionally, causing his death." 11 M.J. 36, 37. Certainly, there is evidence from which the court-martial members could reasonably conclude that death resulted from the wound inflicted by the accused; but there is also other evidence sufficient to lead a reasonable person to find that the victim's death resulted

---

1. *United States v. Waldron*, 11 M.J. 36, 37 (C.M.A.1981) (Everett, C. J., concurring in result).

2. *Id.* at 38 n. 2.

3. The concession of error is extraneous to the government's opposition to the rationale of the civilian cases relied upon by the Court of Military Review. As expressed in *Sansone v. United States*, 380 U.S. 343, 350 n. 6, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965), the rationale is that instructions on both the offense charged and a lesser offense, when there is no factual dispute concerning an element that distinguishes them, is impermissible because it "only invite[s] the jury to pick between the ...

[greater and lesser] so as to determine the punishment to be imposed, a duty Congress has traditionally left to the judge." The Government argues that, unlike civilian jurors, court-martial members are free to adjudge any sentence they wish for all offenses under the Uniform Code, except spying and premeditated and felony murder, in violation of Articles 106 and 118(1) and (4), Uniform Code of Military Justice, 10 U.S.C. §§ 906 and 918(1) and (4), respectively; consequently, court members need not compromise their oath as regards the findings of guilty just to assure a lesser punishment for the accused.

from a cause entirely independent of the accused's action. Defense counsel acknowledged as much at trial.

Counsel never stipulated—and the accused never took the stand to admit—that the accused's act caused the victim's death. Since the accused had entered a plea of not guilty, the cause of death was "in dispute." At the Article 39(a)[4] session at which proposed instructions were considered, defense counsel reminded the trial judge of his obligation to instruct on all lesser offenses the evidence raised "as a matter of law." Counsel further observed that lesser offenses of "assaults" would be raised by evidence "showing" that the "cause of death was not criminally attributable to the accused. He said:

> [T]he absence of causation as to death which would allow or require a charge of assault intentionally inflicting grievous bodily harm and assault with a dangerous weapon would certainly seem under the evidence—also in view of the fact that voluntary manslaughter would be charged and involuntary manslaughter were charged, that the evidence would have to—based on a ruling of that type, those preliminary rulings would require those additional offenses. We do not desire that they be charged, nor do we desire assault and battery be charged, but can visualize no case in which a charge of intentional infliction of grievous bodily harm would be a proper—where it would not necessarily mandate an assault and battery charge, in view of the only missing element there being the intentional act, which the government has suggested may not be the case in this case or has been raised by the evidence. We just raise this as a duty we feel would be incumbent upon us to raise, a matter which we have reviewed and have discussed, relative to the proposals stated yesterday. But I'd again indicate that we are not requesting that, those instructions. And we again assert our desires not to have any of the other LIOs instructed on, your Honor.

At the conclusion of these remarks, the military judge said: "Well, in view of the defense position, I will include the additional lesser included offense of assault and battery."

Conflicting evidence of the cause of death is present. Prosecution exhibit 6, entitled "MEDICAL EXAMINER'S REPORT," was admitted into evidence. Trial counsel had wanted to mask part of the report, but at the insistence of individual military counsel, all of it was admitted. The exhibit consists of an authenticated copy of a business record, in Arabic, prepared for the Department of Forensic Medicine, Ministry of Justice, Government of the Arab Republic of Egypt, and an English language translation. The report contains two statements as to the cause of the victim's death. The first represents that the victim "died on July 19, 1977 as a result of myocardial infarction and severe collapse of the cardio-respiratory systems." (P. 2.) The second attests that "[d]eath was caused by the bullet which resulted in the crumbling of the upper jawbone and bleeding on the brain's surface." (P. 4.)

Myocardial infarction is a clot in a coronary artery that closes off the supply of blood to the heart muscle. Maloy, *Simplified Medical Dictionary for Lawyers*, 405 (3d ed. 1960). Loss of blood to the heart muscle can result in heart failure. Thus, if the conditions incident to the crumbling of the upper jawbone and the bleeding on the brain's surface, which were given as the other cause of death, were not the competent producing cause of the clot, the court members were free to find that the two causes of death were independent of each other. No such connection was established.

The victim was shot in the face on July 15, and he died on July 19. A reasonable person could, in my opinion, find that the victim died of a heart condition not causally related to the injury the accused inflicted upon his face. During earlier argument on the admissibility of another government exhibit, trial counsel referred to that circum-

---

4. Uniform Code of Military Justice, 10 U.S.C. § 839(a).

stance. She argued that "the seriousness of the injury" would be placed in issue by the absence of "positive expert testimony as to whether the bullet wound . . . actually caused the death of the victim." Similarly, defense counsel referred to the uncertainty in the evidence of causality. In argument on a defense motion challenging the adequacy of the staff judge advocate's pretrial advice, he described the two official statements as representing "conflicting evidence relative to cause of death."[5] He characterized myocardial infarction as a "heart attack." At the time of these arguments, government counsel anticipated the appearance at trial of the Egyptian doctor who had attended the victim at the hospital and had certified his death as due to myocardial infarction. However, the doctor did not appear. The lawyers agreed, and the accused consented, to a stipulation as to what the doctor would have testified to had he appeared, but no part of the stipulation included testimony as to the cause of death.

5. Additionally, counsel sought discovery of "medical documents," including x-rays because they bore, importantly, on the determination of

In my opinion, on the evidence before the court members, the cause of death was in dispute.

As conflicting evidence as to the cause of death existed, I conclude that the trial judge correctly instructed the court members on all lesser offenses that would result from a finding by the court members that the accused's act did not, directly or indirectly, cause the victim's death. I would, therefore, answer in the negative so much of the certified question as asks whether "the United States Navy Court of Military Review [was] correct, as a matter of law, in setting aside the accused's conviction of the offense of assault in which grievous bodily harm was intentionally inflicted and dismissing the charge." I would reverse the decision of the Court of Military Review, and return the record of trial to the Judge Advocate General of the Navy for resubmission to the court for further review of the case.

"whether or not the cause of death was related to a bullet wound to the head or otherwise."