UNITED STATES, Appellee,

v.

Richard A. EMMONS, Airman First Class, U.S. Air Force, Appellant.

No. 61,595.
ACM 26727.

U.S. Court of Military Appeals.

Argued Jan. 10, 1990.

Decided Sept. 20, 1990.

----

For Appellant: *Major George P. Clark* (argued); *Colonel Richard F. O'Hair* and *Major Lynne H. Wetzell* (on brief).

For Appellee: *Captain James C. Sinwell* (argued); *Colonel Joe R. Lamport, Colonel Robert E. Giovagnoni, Major Terry M. Petrie* (on brief); *Major Paul H. Blackwell, Jr.*

### Opinion of the Court

COX, Judge:

Appellant was tried by a general court-martial with members at Travis Air Force Base, California, on November 16–24, 1987. Contrary to his pleas, he was found guilty of aggravated assault, in violation of Article 128, Uniform Code of Military Justice, 10 USC § 928.[1] His sentence to confinement for 14 years, total forfeitures, reduction to airman basic, and a dishonorable discharge was approved by the convening authority. The Court of Military Review, in an unpublished opinion, affirmed. This Court granted review of the following issue:

> WHETHER THE MILITARY JUDGE ERRED, TO THE SUBSTANTIAL PREJUDICE OF APPELLANT, BY INSTRUCTING THE COURT MEMBERS THAT THEY COULD CONSIDER AGGRAVATED ASSAULT WITH A DANGEROUS WEAPON, IN VIOLATION OF ARTICLE 128, AS A LESSER INCLUDED OFFENSE OF ARTICLE 118, UNPREMEDITATED MURDER.

Appellant was originally charged, *inter alia,* with unpremeditated murder, to which he pleaded not guilty. At or about midnight on the evening of June 20, 1987, he left his barracks at Travis AFB with two Air Force friends, Airman First Class Douglas L. Lawrence and Airman Donald L. Burton, in Lawrence's car. They drove to see a friend of appellant in the nearby town of Vacaville, where they intended to purchase and use cocaine. Also, before leaving the base, Airman Burton said he wanted to bring his gun, a ".38 special," because he wanted to take it with him the next day to a nearby lake. Airman Lawrence and appellant also owned guns, and each decided to take his weapon on the trip to Vacaville. Lawrence owned a ".380 semi-automatic pistol," and appellant had a 9–millimeter, semi-automatic pistol.

Once at the house in Vacaville, the three men bought and snorted cocaine, and drank several beers with appellant's friends until about 6:00 a.m. At that time, they began their trip back to the base. Lawrence was driving, but all three were very intoxicated. During the ride, appellant took Lawrence's pistol from the console and held it up towards Lawrence's head. The gun discharged, fatally wounding Lawrence. The car careened off the road and crashed. The police arrived shortly thereafter.

The Government's case rested primarily on appellant's confession, wherein he stated that he believed Lawrence's gun was loaded when he picked it up from the console, but that he did not "know how or why the gun went off." The Government also relied on Airman Burton's testimony, extensive forensic evidence, and a stipulation of fact in which appellant agreed that Lawrence died from a gunshot wound to the head.

The defense introduced testimony from police investigators to support appellant's claim that he did not know Lawrence's gun was loaded.

Before closing arguments, the military judge informed counsel that he was going to instruct the members on unpremeditated

---

1. Appellant was also found guilty, pursuant to his pleas, of wrongfully using cocaine and unlawfully carrying a concealed weapon, in violation of Articles 112a and 134, Uniform Code of Military Justice, 10 USC §§ 912a and 934, respectively.

murder under Article 118(2) and (3), UCMJ, 10 USC § 918(2) and (3); aggravated assault with a loaded firearm under Article 128, UCMJ, 10 USC § 928; involuntary manslaughter caused by culpable negligence under Article 119, UCMJ, 10 USC § 919; and negligent homicide under Article 134, UCMJ, 10 USC § 934.

Defense counsel did not object to the instruction on involuntary manslaughter caused by culpable negligence. He did object, however, to the instruction for aggravated assault, arguing that the only difference between Articles 118 and 128 was that Lawrence was dead. The military judge ruled that he would give the instruction, stating:

> MJ: The entire anthem of 128 violations, involving assaults, are lesser included offenses of the 118.

>    *    *    *    *    *    *

> MJ: I am going to give the instruction. It is raised by the evidence and it is completely different and is not covered. I do not find that simple assault is applicable as there is no evidence that the victim was ever placed in fear of an [im]minent battery, therefore also assault and battery would not be applicable because we do not have the assault. . . .

The maximum punishment for unpremeditated murder is life imprisonment—para. 43e(2), Part IV, Manual for Courts–Martial, United States, 1984; for aggravated assault committed with a firearm, it is confinement for 8 years—para. 54e(8)(a), Part IV, Manual, *supra;* for involuntary manslaughter caused by culpable negligence, it is 3 years—para. 44e(2), Part IV, Manual, *supra;* for negligent homicide, it is 1 year —para. 85e, Part IV, Manual, supra. The instructions were presented to the members according to the severity of the punishment for each crime, rather than the elements.[2] Defense counsel did not object to this procedure. Although not articulated by defense counsel, if the aggravated-assault instruction had not been given, the members would have been presented with sentencing prerogatives ranging from life imprisonment, dropping next to 3 years for manslaughter, without the intermediate punishment of 8 years for aggravated assault.

Appellant claims before this Court, as he did before the Court of Military Review, only that the instruction on aggravated assault was improper because there was no factual dispute as to the cause of death. The Government has conceded that the instruction was prejudicial error. It has asked that the finding of guilty to aggravated assault be set aside, and that instead we enter a finding of guilty to another lesser-included offense, involuntary manslaughter.

## I

We first hold that the Government's concession is not determinative of this appeal. *See United States v. McNamara,* 7 USCMA 575, 578, 23 CMR 39, 42 (1957). Turning to the alleged error, the standard for deciding when an instruction on a lesser-included offense is warranted is simply to determine whether, on the facts of the case, "the lesser offense" is "included within, but not . . . completely encompassed by the greater" one. Therefore, "[a] lesser-included-offense instruction is only proper where the charged greater offense requires" court members "to find a disputed factual element which is not required for conviction of the" lesser violation. *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965).[3]

---

2. The Federal Sentencing Guidelines likewise treat aggravated assault as a more serious offense than involuntary manslaughter resulting from negligence. *See Federal Sentencing Guidelines Manual,* §§ 2A1.4(a) and 2A2.2(a) at 30 and 32 (1990 Edition).

3. "An instruction on a lesser-included offense is proper when an element from the charged offense which distinguishes that offense from the lesser-included offense is in dispute." Discussion, RCM 920(e), Manual for Courts–Martial, United States, 1984. *See also* Art. 79, UCMJ, 10 USC § 879 ("An accused may be found guilty of an offense necessarily included in the offense

■ The lesser-included-offense doctrine was developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged. It was also recognized, however, that a "defendant is entitled to an instruction on a lesser-included offense if the evidence would permit a jury *rationally* to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct.1993, 1995, 36 L.Ed.2d 844 (1973) (emphasis added); *see Sansone v. United States*, 380 U.S. at 350, 85 S.Ct. at 1009.

An instruction on a lesser-included offense, when warranted, serves both the defense and the prosecution. "[I]f the prosecution has not established beyond a reasonable doubt every element of the offense charged, and if no lesser offense instruction is offered, the jury must, as a theoretical matter, return a verdict of acquittal." *Keeble v. United States*, 412 U.S. at 212, 93 S.Ct. at 1998. A defendant, however, is also "entitled to a lesser-offense instruction ... because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Id.* at 212–13, 93 S.Ct. at 1998. By the same token, if the prosecution has met its burden of showing that an accused is guilty of *"some"* offense, and the defendant has been given adequate notice that a lesser-included offense is present, the Government should not be deprived of a conviction of the lesser violation. *United States v. Stolarz*, 550 F.2d 488 (9th Cir.), *cert. denied*, 434 U.S. 851, 98 S.Ct. 162, 54 L.Ed.2d 119 (1977).

■ The case before us is somewhat unique in that an accused most often claims that he was prejudiced by the *lack* of an instruction on a lesser-included of-

charged or of an attempt to commit either the offense charged or an offense necessarily in-

fense. *See Vujosevic v. Rafferty*, 844 F.2d 1023 (3d Cir.1988); *United States v. Wilson*, 26 MJ 10, 13 (CMA 1988); *United States v. Rodwell*, 20 MJ 264 (CMA 1985). Nonetheless, an instruction on a lesser-included "offense may appropriately be requested by either the prosecution or the defense." *United States v. Scharf*, 558 F.2d 498, 502 (8th Cir.1977).

The elements of unpremeditated murder under Article 118(2) and (3), are:

43. Article 118—Murder

 \*   \*   \*   \*   \*   \*

b. Elements.

 \*   \*   \*   \*   \*   \*

(2) Intent to kill or inflict great bodily harm.

(a) That a certain named ... person is dead;

(b) That the death resulted from the act or omission of the accused;

(c) That the killing was unlawful; and

(d) That, at the time of the killing, the accused had the intent to kill or inflict great bodily harm upon a person.

(3) Act inherently dangerous to others.

(a) that a certain named ... person is dead;

(b) That the death resulted from the intentional act of the accused;

(c) That this act was inherently dangerous to others and showed a wanton disregard for human life;

(d) That the accused knew that death or great bodily harm was a probable consequence of the act; and

(e) That the killing was unlawful.

The elements of aggravated assault, which is listed as a lesser-included offense of unpremeditated murder, para. 43d(2)(b), Part IV, Manual, *supra*, are:

54. Article 128—Assault

 \*   \*   \*   \*   \*   \*

cluded therein."). *See also* Fed.R.Crim.P. 31(c).

b. Elements

\* \* \* \* \* \*

(4) Aggravated assault.

(a) Assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm.

(i) That the accused attempted to do, *offered to do*, or *did* bodily harm to a certain person;

(ii) That the accused did so with a certain weapon ...;

(iii) That the attempt, offer, or bodily harm was done with unlawful force or violence; and

(iv) That the weapon, means, or force was used in a manner likely to produce death or grievous bodily harm; and [when a loaded firearm was used:]

(v) That the weapon was a loaded firearm.

Part IV, Manual, *supra.*

■ Clearly, aggravated assault is a lesser-included offense of unpremeditated murder. Additionally, the evidence sufficiently raised the issue of appellant's intent, warranting the instruction. *Cf. United States v. Waldron,* 11 MJ 36, 38 n. 2 (CMA 1981) (Everett, C.J., concurring in the result). There is no *per se* rule against instructions and conviction on the lesser-included offense of assault when murder is charged. *See United States v. Grey Bear,* 883 F.2d 1382, 1386 (8th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990); *cf. United States v. Davis,* 2 USCMA 505, 511–12, 10 CMR 3, 9–10 (1953).

## II

■ We would be remiss if we did not acknowledge that the guilty verdict to the charge of aggravated assault alone seems inconsistent in light of the fact that the

victim's death was undisputed at trial. For a conviction under Article 128, however, "[i]t is not necessary that death or grievous bodily harm be actually inflicted to prove assault with a dangerous weapon or means likely to produce grievous bodily harm." Para. 54c(4)(a)(iv), Part IV, Manual, *supra.* Furthermore, the fact that appellant intentionally brandished a loaded firearm is virtually an express element of an offer-type aggravated assault. *See* para. 54b(4)(a)(v), Part IV, Manual, *supra.* Thus, a court-martial with members could rationally return a verdict of guilty to aggravated assault even though the victim was killed. *Sansone v. United States, supra.*

We follow the Supreme Court's admonition that it is "imprudent and unworkable" to allow an accused

to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them.

*United States v. Powell,* 469 U.S. 57, 66, 105 S.Ct. 471, 477, 83 L.Ed.2d 461 (1984).

## III

■ Accepting that aggravated assault was properly instructed upon as a lesser-included offense of unpremeditated murder, the question then becomes: In what order relative to the other lesser-included offenses, involuntary manslaughter and negligent homicide, should aggravated assault have been presented? [4]

RCM 921(c)(5), Manual, *supra,* prescribes:

Members shall not vote on a lesser included offense unless a finding of not guilty of the offense charged has been reached. If a finding of not guilty of an offense charged has been reached *the members shall vote on each included offense on which they have been in-*

---

**4.** Contrary to the opinion concurring in the result, aggravated assault is not necessarily a lesser-included offense of involuntary manslaughter by culpable negligence (or of negligent homicide) in this case but rather is just a different offense. While the "offer" to do bodily harm may be culpably negligent, the aggravated assault requires the additional element that the

offer "creates in the mind of another a reasonable apprehension of receiving immediate bodily harm." Para. 54c(1)(b)(ii), Part IV, Manual, *supra.* Further, "[a]n 'attempt'-type assault requires a specific intent to inflict bodily harm," a culpable state of mind greater than culpable negligence. Para. 54c(1)(b)(i).

*structed, in order of severity beginning with the most severe.*

(Emphasis added.)

█ Prior to 1984, the Manual for Courts–Martial was silent about the order in which members should vote upon lesser-included offenses. Although the present Manual prescribes that the members shall vote upon the offenses "in order of severity," there is no indication whether "severity" means severity of punishment to the accused or severity of the elements of the offenses.

Also, before the 1984 Manual, the maximum punishment for all aggravated assaults by a means likely to produce death or grievous bodily harm was 3 years. *See* Table of Maximum Punishments, para. 127c, Manual for Courts–Martial, United States, 1969 (Revised edition) at 25–14 (Change 7), and Manual for Courts–Martial, United States, 1951, at 224. In 1984, however, for aggravated assaults committed with a loaded firearm, the President increased the punishment to 8 years. *See* para. 54e(8)(a), Part IV, 1984 Manual, *supra.* For reasons unknown to this Court, the President did not increase the punishment for involuntary manslaughter or negligent homicide when committed with a loaded firearm and, instead, chose for the maximum punishment to remain 3 years and 1 year, respectively, in all cases.

Congress has delegated to the President the power to establish sentences for crimes under Article 56 of the Uniform Code of Military Justice, 10 USC § 856, and has chosen not to override his decision as to how an aggravated assault shall be punished. *Cf. Mistretta v. United States*, 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). Indeed, the same result has been reached by the Federal Sentencing Commission.[5] Therefore, we see no error, and appellant has not alleged any, in the military judge's decision to instruct the members in the same order as the severity of the punishment which appellant would suffer.

We are satisfied that the Government was entitled to the instruction on the lesser-included offense. Accordingly, there was no error as to findings. The Government's concession, which we have declined to accept, may nevertheless persuade the Court of Military Review to conclude that appellant's sentence is too severe. We will give them the opportunity to take another look at the appropriateness of the sentence.

The decision of the United States Air Force Court of Military Review is affirmed as to findings and is set aside as to the sentence. The record of trial is returned to the Judge Advocate General of the Air Force for submission to that court for further review of the sentence.

SULLIVAN Judge (concurring):

There is authority that might be construed to preclude a finding of guilty of aggravated assault if death does occur. *See United States v. Davis*, 2 USCMA 505, 511–12, 10 CMR 3, 9–10 (1953); *see also United States v. Schreiber*, 5 USCMA 602, 608, 18 CMR 226, 232 (1955); *United States v. Craig*, 2 USCMA 650, 655, 10 CMR 148, 153 (1953). To the extent such authority establishes a *per se* rule, it reflects adoption of a common-law distinction between a felony and a misdemeanor. The particular distinction, no longer recognized, permitted greater procedural rights for a person charged with a misdemeanor. Accordingly, conviction of a misdemeanor at a felony trial was considered unfair. *See generally* Clark and Marshall, *A Treatise On The Law Of Crimes* § 2.03 (6th ed. 1958); American Law Institute, *Model Penal Code and Commentaries* (hereafter ALI), Part I, § 1.07 at 130 n. 108. The modern view is that there should be no *per se* rule against instructions and conviction on the lesser-included offense of assault under a charge of murder. ALI, *supra,* § 1.07 at 133.

---

5. *See* n. 2, *supra.* Other jurisdictions have this same possible result. *See, e.g.,* 18 Pa.C.S.A. § 2702 (as amended 1986); 42 Pa.C.S.A. § 9712 (1982); 18 Pa.C.S.A. § 2504 (1973).

I read our authority, however, as focusing on the evidence presented in each case and the rational possibility of the members finding the lesser offense of assault with a dangerous weapon. *See Schmuck v. United States*, 489 U.S. 705, 109 S.Ct. 1443, 1450 n. 8, 103 L.Ed.2d 734 (1989). To this extent I agree with Judge Cox' reliance on *Keeble v. United States*, 412 U.S. 205, 208, 93 S.Ct. 1993, 1995, 36 L.Ed.2d 844 (1973), and his assessment of the evidence of record. The nature of the evidence in this case did not preclude the members from being instructed on the assault-with-a-dangerous-weapon offense as well as the different homicide offenses. *See United States v. Grey Bear*, 883 F.2d 1382 (8th Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990); *cf. United States v. Lincoln*, 630 F.2d 1313, 1320 (8th Cir.1980). There was a basis in the record for the members to rationally find appellant only intended an offer-type assault of the victim. *United States v. Lumpkins*, 439 F.2d 494 (D.C.Cir.1970).

EVERETT, Chief Judge (concurring in the result):

### A

A military judge has a duty to instruct court members on all lesser-included offenses reasonably raised by the evidence. In my view, the converse of this proposition is that a military judge has a duty not to instruct on lesser-included offenses not reasonably raised by the evidence. Indeed, to do so may introduce confusion and lead to miscarriages of justice. *Cf. United States v. Waldron*, 11 MJ 36 (CMA 1981).

Obviously, if the military judge concluded that the court members might have a reasonable doubt that appellant's acts had caused Lawrence's death, he should have instructed on aggravated assault as a lesser-included offense. In that event, this case would present no difficulty. However, nothing in the record of trial suggests that the military judge gave the instruction on aggravated assault for this reason. The parties had stipulated that Lawrence had

died from a gun shot wound. The evidence was undisputed that the firearm had discharged while being held by appellant. Under any reasonable hypothesis, Emmons was guilty of some form of homicide—murder, manslaughter, or negligent homicide; and, therefore, no duty existed for the judge to instruct on aggravated assault or on any other kind of assault. Indeed, the defense objected at trial to an instruction on aggravated assault, and the Government has conceded consistently that such an instruction should not have been given.

In his analysis of lesser-included offenses, Judge Cox emphasizes that assault with a loaded firearm carries up to 8 years' confinement, while the maximum punishment for involuntary manslaughter is only 3 years' confinement. *Compare* para. 54e(8)(a) *with* para. 44e(2), Part IV, Manual for Courts–Martial, United States, 1984. To me, this circumstance has little relevance. Congress, not the President, defines the elements of crimes and thereby determines which offenses are lesser-included. Here, our task of determining which offenses are lesser-included should be performed with deference to the Uniform Code of Military Justice, rather than to the maximum punishments authorized by the President.

Moreover, I am convinced that the President prescribed the maximum punishments with due attention to the crimes defined by Congress in the Code. An assault is an attempt or offer "with unlawful force or violence to do bodily harm to another person." *See* Art. 128(a), UCMJ, 10 USC § 928(a). An aggravated assault is (1) "an assault with a dangerous weapon or other means or force likely to produce death or grievous bodily harm; or (2) ... an assault" wherein the accused "intentionally inflicts grievous bodily harm with or without a weapon." Art. 128(b).

"An 'attempt' type assault requires a specific intent to inflict bodily harm, and an overt act...." Para. 54c(1)(b)(i), Part IV, Manual, *supra*. "An 'offer' type assault is an unlawful demonstration of violence, either by an intentional *or by a culpably*

*negligent act or omission,* which creates in the mind of another a reasonable apprehension of receiving immediate bodily harm. Specific intent to inflict bodily harm is not required." Para. 54c(1)(b)(ii), Part IV, Manual, *supra* (emphasis added).

With these definitions in mind, the drafters of the Manual's punishment provisions for the punitive articles of the Uniform Code of Military Justice undoubtedly anticipated that, when an accused had used a firearm in an "attempt type assault" and someone was killed, the result would be conviction for murder—which authorizes confinement for life. Conceivably, an accused who used a firearm could be intending only "bodily harm"—rather than the "great bodily harm" required for conviction of murder under Art. 118(2) of the Code, 10 USC § 918(2). However, even though in military law malice is no longer conclusively presumed from use of a deadly weapon—as it was at common law, *cf. Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975)—the likelihood is minimal that a factfinder would conclude that a person who had killed someone with a firearm had intended to do only "bodily harm" and not "great bodily harm." In that unlikely event, the conviction would be for involuntary manslaughter.

If an "offer type assault" were involved, the drafters of the Manual's punishment provisions probably contemplated that, when the accused had intentionally used a firearm and someone was killed, his conduct would have been "inherently dangerous to others" and would have "evince[d] a wanton disregard of human life." Thus, he could be convicted of murder under Article 118(3). *See United States v. Berg,* 30 MJ 195 (CMA 1990), *reaffirmed on reconsideration,* 31 MJ 38 (CMA 1990). However, as the drafters may not have considered,

someone whose intentional conduct endangers only one person but who has no specific intent to do bodily harm, would not be guilty of murder under either Article 118(2) or 118(3). *Id.*

Finally, I infer that the President contemplated that, when an "offer type assault" with a loaded firearm had occurred unintentionally but because of an accused's negligence and someone had been killed, the maximum confinement imposable would be the 3 years authorized for involuntary manslaughter.[1]

In authorizing 8 years' confinement for aggravated assault with a firearm, the President undoubtedly had in mind an "attempt type assault," which "requires a specific intent to inflict bodily harm," or an intentional "offer type assault." Under those circumstances, the maximum punishment is consistent with the wrongdoer's *mens rea* and with current Federal and state sentencing schemes. Moreover, this maximum punishment is consistent with the 10 years' confinement authorized as the maximum punishment when grievous bodily harm is intentionally inflicted with a loaded firearm. Para. 54e(9)(a), Part IV, Manual, *supra.*

On the other hand, if 8 years' maximum punishment is authorized for a culpably negligent "offer type assault" with a loaded firearm but only 5 years' maximum punishment is permitted for an assault in which grievous bodily harm is intentionally inflicted without a firearm, the maximum punishment seems inconsistent with either the *mens rea* involved or the harm caused by the crime.

I realize that occasionally the results permitted by the authorized maximum punishments seem strange.[2] Nonetheless, I am

---

1. If only simple negligence were involved in the accused's handling of the firearm, he could only be convicted of negligent homicide.

2. For example, a servicemember who threatens to hit someone with his fist has communicated a threat, for which a dishonorable discharge and up to 3 years' confinement are authorized. Para. 110e, Part IV, Manual for Courts–Martial,

United States, 1984. On the other hand, if the servicemember simply hits the intended victim without any prior threat, the maximum punishment is a bad-conduct discharge and 6 months' confinement. Para 54e(2), Part IV, Manual, *supra. See United States v. Holiday,* 4 USCMA 454, 459, 16 CMR 28, 33 (1954) (Brosman, J., dissenting).

convinced that the President never intended to authorize 8 years' punishment for the culpably negligent discharge of a firearm which caused no injury and yet to authorize only 3 years' punishment when the culpably negligent discharge resulted in death. More importantly, even if he so intended, I still am convinced that when, as in this case, no dispute exists that the accused's conduct caused the victim's death, no instruction should be given on aggravated assault—or any other assault—as a lesser-included offense.

B

Even though the military judge erred in instructing on aggravated assault, thereby opening up Pandora's box, I cannot accept one remedy that has been proposed—namely, to substitute a finding of involuntary manslaughter for aggravated assault. In my view, neither this Court nor the Court of Military Review is empowered to find an accused guilty of a homicide when the court-martial has not done so—no matter how sure we are that the evidence overwhelmingly establishes his guilt. Nevertheless, I see no reason to give Emmons the windfall of setting aside the findings of guilty of aggravated assault. He is no less guilty of aggravated assault merely because he was also guilty of a greater crime with which he was charged.

Thus, I join in remanding the case to the Court of Military Review to reevaluate the appropriateness of the sentence. It is my view that, in performing this duty, the court below should proceed on the premise that the maximum punishment of the aggravated assault of which Emmons was convicted was 3 years' confinement.