**UNITED STATES, Appellee,**

v.

**Specialist Alex T. ARVISO,
554–23–8232, United States
Army, Appellant.**

**ACMR 8901523.**

U.S. Army Court of Military Review.

15 Feb. 1991.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Allen F. Bareford, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Paul E. Jordan, JAGC (USAR), Major Martin D. Carpenter, JAGC (on brief).

Before JOHNSON, WERNER and GRAVELLE, Appellate Military Judges.

## OPINION OF THE COURT

GRAVELLE, Judge:

Contrary to his pleas, the appellant was convicted by a general court-martial consisting of officer and enlisted members of two specifications of indecent assault, in violation of Article 134, Uniform Code of Military Justice, 10 U.S.C. § 934 (1982). The convening authority approved the adjudged sentence of a bad-conduct discharge, confinement for three years, forfeiture of $349.00 pay per month for thirty-six months and reduction to the grade of Private E1.

The appellant asserts that the evidence is insufficient to prove that he intended to gratify his lust or sexual desires as to each of the two specifications. Appellant further asserts that the military judge erred

by failing to instruct the members on the lesser included offense of assault and battery.

We hold that the evidence is legally and factually sufficient to sustain the conviction of the appellant for both specifications and that the military judge's instructions were correct.

The appellant was a medical corpsman assigned to the Internal Medicine Clinic of Tripler Army Medical Center. On two consecutive days, he stuck his finger into the anus of female patients following the examination of these patients by military physicians after these physicians had left the examining room. These acts were the basis of the charges. Appellant admits inserting his finger as alleged in each specification but asserts that he lacked criminal intent because the touching was for valid medical purposes.

## I. SUFFICIENCY OF THE EVIDENCE

### A. Mrs. U

■ On 26 October 1988, Mrs. U, the wife of a Navy Chief Petty Officer, arrived at the Internal Medicine Clinic for a scheduled appointment. The Chief, Internal Medicine Clinic was to perform an examination of her colon. After the doctor explained the procedure, which consisted of inserting a flexible sigmoidoscope into her anus in order to view her colon, the doctor told the appellant to prepare Mrs. U for the examination. The appellant took Mrs. U to the examination room and instructed her to undress from the waist down behind a moveable screen in the corner of the examination room. He instructed her to cover herself with a disposable paper gown. As Mrs. U was changing into the hospital gown, she noticed the toes of the appellant's shoes pointing at her under the bottom of the moveable screen. She testified that "When I saw his shoes, I—I—just I—I—felt like he was watching me; I wasn't sure. I didn't look up to see." During this time, the appellant made small talk, including asking the patient how old she was and how old her children were, and remarking that she didn't look old enough to have children that age. When Mrs. U had completed undressing and putting on the paper gown, the appellant showed her the examination table and how to position herself on it. The doctor then entered the room and performed the examination by inserting the flexible sigmoidoscope. Following the examination, the doctor left the examination room and returned to his office to prepare for the post-examination interview with the patient. Mrs. U testified to events following the doctor's departure:

A. "Well, I started to get up to get dressed and [the appellant] said, "No, don't get up yet." He said that he had to check and make everything—make sure everything was back in the right place."

Q. Okay. And what happened next, Mrs. [U]?

A. And then he, um, went to the left backside of myself and, um, put his finger in my rectum.

Q. Okay, I'm not asking this to embarrass you, Mrs. [U], but you could feel his finger inside of you?

A. Yes, sir.

Q. Okay. And about how long would you estimate his finger was there?

A. I'd say a minute.

Q. Okay. And what happened after he removed his finger?

A. Then he said I could dressed [sic]— and go see [the examining doctor].

Mrs. U did not report the incident to the doctor, but was quite upset about it and reported the incident to her husband that evening.

The appellant testified that he did insert his finger into Mrs. U's anus to examine her for injury from insertion of the sigmoidoscope. He testified that he was concerned that the doctor was using the scope in a manner that could have injured Mrs. U and could damage the sigmoidoscope. He further testified that the examining doctor used a technique much different than that used by other doctors in the clinic and that he had reported his concerns to another doctor in the clinic on the same day. That other doctor corroborated that the appellant had, at about the time of the charged

offenses, expressed to him some concern about the technique used by the examining doctor.

### B. Mrs. D

On 27 October 1988, Mrs. D had an appointment with a different doctor in the Internal Medicine Clinic for a hemorrhoid examination. Mrs. D was the wife of a retired Army officer and spoke poor English because of her Japanese background. After a briefing by the examining doctor, the appellant showed Mrs. D to the examination room and instructed her to remove the clothing from the lower part of her body and to put on a paper hospital gown. He then instructed her how to position herself on the examination table. The doctor entered the room and performed the hemorrhoid examination. Just after the doctor returned to his office, the appellant told Mrs. D to remain on the examination table. In response to the trial counsel's questions, Mrs. D testified:

Q. Okay. He told you to stay in that position?

A. Position, I thought that the procedure, you know, something come out, thats why I have to stay. So I did, the same position.

Q. Okay. And what happened next?

A. [Heavy sigh.] And he told me I have—I have some—I forget name of that—my——

Q. A hemorrhoid?

A. Hemorrhoid, yes. I said, "I know, and Dr. Marshall [the examining physician] knows already."

Q. Okay. And what happened next?

A. And he—he—well, he touched that—my rectum, and——

Q. Did he put his finger inside of you?

A. Not too deep, but yes, I think so.

Q. Okay, but you could feel his finger inside of you?

A. Yes.

Q. Okay. And what happened——

A. Outside, I—I mean, go inside, yeah.

Q. And what happened when he removed his finger?

A. Toward the—my front.

Q. Towards your vagina?

A. Yes.

Q. Okay. And what did you do when you felt his finger moving toward your vagina?

A. I said, "Excuse me." I thought already—something funny——

Q. Uh-huh.

A. ——going on.

Q. And what did he say?

A. He said, "I'm sorry."

Thereafter, Mrs. D got dressed and reported the incident to the treating physician.

The appellant testified that Mrs. D had asked him if she had hemorrhoids and he touched her in order to give her an answer. He denied purposely attempting to touch her vagina.

### C. Other Pertinent Evidence

The treating physicians of Mrs. U and Mrs. D each testified that they did not authorize the appellant to touch the patients or to "reexamine" them, but were vague as to the specific duties and limitations upon corpsmen within the clinic.

The appellant presented the testimony of several physicians, nurses and corpsmen that he was a conscientious medic with a good record. All witnesses, however, testified that corpsmen do not have permission to touch patients in the manner done by the appellant.

### D. Analysis

The standard for reviewing the legal sufficiency of the evidence is whether, considering the evidence in the light most favorable to the government, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A.1987).

The responsibility of this Court, however, does not end with testing for legal sufficiency. We also test for factual sufficiency—an "awesome responsibility." *United States v. Cole,* 31 M.J. 270 (C.M.A.1990). The standard for review of factual sufficiency is whether, after weighing the evidence in the record of trial and making allowances for not having personally ob-

served the witnesses, the members of the Court of Military Review are themselves convinced of the accused's guilt beyond a reasonable doubt. *United States v. Turner, id.*

Indecent assault is a specific intent crime involving three elements: (1) that the accused assaulted a certain person not the spouse of the accused in a certain manner; (2) that the acts were done with the intent to gratify the lust or sexual desires of the accused; and, (3) that under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces. Manual for Courts–Martial, United States, 1984, Part IV, para. 63b [hereinafter cited as M.C.M., 1984]. "Indecent" signifies that form of immorality relating to sexual impurity which is not only grossly vulgar, obscene, and repugnant to common propriety, but tends to excite lust and deprave the morals with respect to sexual relations. MCM, 1984, paras. 63c and 90c. Acts not inherently indecent may be rendered so by the surrounding facts and circumstances. *United States v. Hobbs,* 23 C.M.R. 157, 164 (C.M.A.1957); *United States v. Wilson,* 13 M.J. 247, 250 (C.M.A.1982); *United States v. Woodard,* 23 M.J. 514 (A.F.C.M.R.1986), *vacated and remanded,* 23 M.J. 400 (C.M.A.1987) (summary disposition), *rev'd on other grounds,* 24 M.J. 514 (A.F.C.M.R.1987). Inserting a finger into the anus can be lewd and lascivious. *See, e.g., United States v. Clarke,* 17 M.J. 1055 (A.F.C.M.R.1983).

We hold that under the circumstances of this case, the acts of the appellant amounted to indecent assault and that there is sufficient evidence of record to show both factually and legally that the appellant possessed the specific intent to commit the offenses of indecent assault.

## II. THE MILITARY JUDGE'S RULING

■ Following the completion of the defense case, the military judge informed counsel that he was not going to instruct the members on the offense of assault consummated by a battery, and both counsel

agreed. The appellant asserts that the military judge's ruling was error. We disagree.

■ If the Manual for Courts–Martial, 1984 states that an offense has no lesser included offenses and if the military judge rules that there are no lesser included offenses and counsel agree, the ruling becomes the law of the case, absent plain error materially affecting the substantial rights of the accused. *United States v. McKinley,* 27 M.J. 78 (C.M.A.1988). The Manual for Courts–Martial, 1984 states that assault consummated by a battery is a lesser included offense of indecent assault. MCM, 1984, Part IV, para. 63d. Therefore, further analysis is required.

■ The military judge is required to instruct on all lesser included offenses raised by the evidence. *United States v. Jackson,* 12 M.J. 163 (C.M.A.1981); *United States v. McCray,* 15 M.J. 1086, 1088 (A.C. M.R.), *pet. denied,* 17 M.J. 36 (C.M.A.1983). A lesser included offense is reasonably raised when a charged greater offense requires the members to find a disputed factual element which is not required for conviction of the lesser included offense. *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882, 888 (1965); *United States v. Emmons,* 31 M.J. 108 (C.M.A.1990); *United States v. McCray, id.* An instruction on lesser included offenses should be given when there is presented in the record some evidence which would allow the factfinders reasonably to conclude that the accused was guilty only in the lesser degree. *United States v. Moore,* 36 C.M.R. 531, 532–3 (C.M. A.1966); *United States v. Birch,* 13 M.J. 847 (C.G.C.M.R.), *pet. denied,* 14 M.J. 317 (C.M.A.1982). Doubts are to be resolved in favor of the accused. *United States v. Bairos,* 39 C.M.R. 15, 17 (C.M.A.1968); *United States v. Clark,* 48 C.M.R. 83, 84 (C.M.A.1973); *United States v. Jackson,* 6 M.J. 261 (C.M.A.1979); *United States v. Staten,* 6 M.J. 275 (C.M.A.1979); *United States v. Birch, id.*

In the present case, the military judge ruled that assault consummated by a battery was not a lesser included offense of

indecent assault, reasoning that either the appellant touched the women for medical purposes (*i.e.*, innocent purpose with no criminal intent) or he touched them to satisfy his lust. There was no middle ground. In other words, the only issue in the case was the appellant's intent: either it was an innocent but misguided intent to perform a medical examination or it was to gratify his sexual desires. Both the trial counsel and the defense counsel agreed with the military judge's determination. Under the circumstances of this case, we hold that the military judge did not abuse his discretion in ruling that assault consummated by a battery was not a lesser included offense of indecent assault.

The findings of guilty and the sentence are affirmed.

Senior Judge JOHNSON and Judge WERNER concur.